Kenneth M. Trujillo-Jamison (Bar No. 280212)
ktrujillo-jamison@willenken.com
707 Wilshire Blvd., Suite 4100
Los Angeles, California 90017
Telephone:  (213) 955-9240
Facsimile:   (213) 955-9250

Attorneys for Defendant X.AI, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTIN SKAGGS, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>X.AI, LLC<br><br>        Defendant. | Case No.: 5:26-cv-04550-BLF<br><br>**DEFENDANT X.AI LLC'S NOTICE OF MOTION AND MOTION TO TRANSFER THE CASE TO THE NORTHERN DISTRICT OF TEXAS**<br><br>Date:      July 30, 2026<br>Time:     9:00 a.m.<br>Ctrm:    1<br><br>Hon. Beth Labson Freeman<br><br>Complaint Filed: May 14, 2026 |

Case No.: 5:26-cv-04550-BLF

DEF. X.AI LLC'S MOTION TO TRANSFER THE CASE TO THE NORTHERN DISTRICT OF TEXAS

**TABLE OF CONTENTS**

PAGE

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND...................................................................................2

    A.    Plaintiff's Allegations ................................................................................2

    B.    xAI's Terms of Service...............................................................................3

III.  LEGAL STANDARD...............................................................................................4

IV.   ARGUMENT ............................................................................................................4

    A.    Plaintiff Agreed to xAI's Terms of Service, Including the Forum Selection
          Clause.........................................................................................................5

    B.    xAI's Terms of Service's Forum Selection Clause Encompasses All
          Claims ........................................................................................................6

    C.    xAI's Terms of Service's Forum Selection Clause Is Valid and
          Enforceable ................................................................................................7

V.    CONCLUSION........................................................................................................10

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Adibzadeh v. Best Buy, Co. Inc.*,
  No. 20-cv-06257-JSW, 2021 WL 4440313 (N.D. Cal. Mar. 2, 2021) ...................................... 5

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
  571 U.S. 49 (2013) ................................................................................................................ 4, 9

*Bauer v. Tacey Goss, P.S.*,
  No. C 12-00876-JSW, 2012 WL 2838834 (N.D. Cal. July 10, 2012)...................................... 8

*Berman v. Freedom Fin. Network, LLC*,
  30 F.4th 849 (9th Cir. 2022) ..................................................................................................... 5

*Bromlow v. D & M Carriers, LLC*,
  438 F. Supp. 3d 1021 (N.D. Cal. 2020)..................................................................................... 7

*Doe v. X Corp.*,
  No. 25-cv-07597-TLT, 2025 WL 3500543 (N.D. Cal. Nov. 6, 2025) ............................. passim

*Eliza Labs, Inc. v. X Corp.*,
  No. 25-cv-07243-AMO, 2025 WL 3003766 (N.D. Cal. Oct. 27, 2025) ........................ 2, 6, 7, 9

*LaCross v. Knight Transport, Inc.*,
  95 F. Supp. 3d 1199 (C.D. Cal. 2015) ....................................................................................... 9

*Li v. Amazon.com ServS. LLC*,
  No. 23-cv-00441-AMO, 2023 WL 8720669 (N.D. Cal. Dec. 18, 2023)................................ 5, 9

*Lloyd v. Facebook, Inc.*,
  No. 21-cv-10075-EMC, 2022 WL 4913347 (N.D. Cal. Oct. 3, 2022)....................................... 4

*Lu v. Dryclean-U.S.A. of Cal., Inc.*,
  11 Cal. App. 4th 1490 (1992) .................................................................................................... 8

*Martinez v. Bloomberg LP*,
  740 F.3d 211 (2d Cir. 2014) ...................................................................................................... 4

*Murphy v. Twitter, Inc.*,
  60 Cal. App. 5th 12 (2021) ........................................................................................................ 8

*Rostami v. Hypernet Inc.*,
  No. 22-cv-01813-EJD, 2023 WL 2717262 (N.D. Cal. Mar. 29, 2023)..................................... 8

*Sun v. Advanced China Healthcare, Inc.*,
  901 F.3d 1081 (9th Cir. 2018) ......................................................................................... 4, 7, 8, 9

*Taddeo-Waite v. X Corp.*,
  No. 3:25-CV-00874 (VDO), 2025 WL 3237422 (D. Conn. Nov. 20, 2025) ......................... 2, 9

*White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*,
  407 F. Supp. 3d 931 (S.D. Cal. 2019) ....................................................................................... 5

*Williams v. X Corp.*,
  No. 1:25-00058-JB-MU, 2025 WL 2801626 (S.D. Ala. Oct. 1, 2025) ............................. 2, 6, 9

*Yuksel v. Twitter Inc.*,
  No. CV-21-00137-TUC-RM, 2022 WL 4367619 (D. Ariz. Sept. 21, 2022) .......................... 10

**Statutes**

18 U.S.C. § 2511 ................................................................................................................. 3

28 U.S.C. § 1404(a) ............................................................................................... 1, 6, 7, 13

Cal. Penal Code § 631 ......................................................................................................... 3

Cal. Penal Code § 632 ......................................................................................................... 3

DEF. X.AI LLC'S MOTION TO TRANSFER THE CASE TO THE NORTHERN DISTRICT OF TEXAS

## NOTICE OF MOTION AND MOTION TO TRANSFER

**PLEASE TAKE NOTICE** that on July 30, 2026, at 9:00 A.M., before The Honorable Beth Labson Freeman, in Courtroom 1 of the United States District Court for the Northern District of California, San Jose, California Division, this Motion to Transfer the Case to the Northern District of Texas filed by Defendant X.AI LLC ("xAI") will be heard. xAI hereby moves for an order transferring this case to the United States District Court for the Northern District of Texas, pursuant to 28 U.S.C. § 1404(a) (the "Motion"). The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities set forth below, the Declaration of Barry Murphy, the papers on file, and the argument received by the Court.

## STATEMENT OF RELIEF SOUGHT

xAI respectfully requests that the Court transfer this action to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Austin Skaggs ("Plaintiff"), individually and on behalf of all others similarly situated, filed a putative class action complaint (ECF No. 1; "Complaint" or "Compl.") against Defendant xAI in the wrong forum. This Court should transfer this action to the United States District Court for the Northern District of Texas under 28 U.S.C. § 1404(a), because Plaintiff agreed to a mandatory forum selection clause in xAI's Terms of Service requiring any disputes to be litigated in courts located in Wichita County or Tarrant County, Texas—not in this Court.

Plaintiff signed up for and created a Grok account in September 2025. Declaration of Barry Murphy ("Murphy Decl.") ¶ 13. "Throughout 2025 and 2026," Plaintiff also "visited" and "entered queries" into Grok.com, the generative artificial intelligence assistant built and operated by xAI ("Grok"). Compl. ¶ 7. By signing up for a Grok account, and repeatedly visiting and entering queries into Grok.com, Plaintiff necessarily agreed to at least two versions of xAI's Terms of Service—both of which required that Plaintiff bring his claims in Texas, not here.

The version of xAI's Terms of Service in effect when Plaintiff filed this action (the

"Operative 2026 Terms") required that:

> [A]ll disputes related to these Terms, the Service . . . or your or others' use of the Service or the complete or partial termination thereof – ***shall be brought and must proceed exclusively in the federal U.S. District Court for the Northern District of Texas or state courts located in Wichita County or Tarrant County, Texas***, United States . . . .

Murphy Decl. ¶ 15 (emphasis added). The version of xAI's Terms of Service in effect when Plaintiff signed up for and created his Grok account in September 2025 (the "September 2025 Terms") similarly required that:

> [A]ll claims or disputes between You and xAI shall be governed by the laws of Texas . . . and ***shall be brought exclusively in the state and federal courts in Tarrant County, Texas***, and the parties hereby irrevocably consent to the exclusive jurisdiction and venue of such courts.

*Id.* ¶ 20 (emphasis added).

Plaintiff's claims—all of which concern the data he input into his Grok queries—are clearly "related to" and "aris[] from" his "use" of Grok and, therefore, fall comfortably within the broad scope of these forum selection clauses. Indeed, *four* federal judges—including two from this Court—have recently enforced substantially similar forum selection clauses (for xAI's affiliate, X Corp. ("X")) and have transferred cases against X to the Northern District of Texas. *See Doe v. X Corp.,* 2025 WL 3500543 (N.D. Cal. Nov. 6, 2025); *Eliza Labs, Inc. v. X Corp.*, No. 25-cv-07243-AMO, 2025 WL 3003766 (N.D. Cal. Oct. 27, 2025); *see also Taddeo-Waite v. X Corp.*, No. 3:25-CV-00874 (VDO), 2025 WL 3237422 (D. Conn. Nov. 20, 2025) (enforcing clause in the X Terms of Service and the Purchaser Terms of Service); *Williams v. X Corp.*, No. 1:25-00058-JB-MU, 2025 WL 2801626 (S.D. Ala. Oct. 1, 2025). This case is no different.

Because Plaintiff's claims here are all covered by xAI's Terms of Service's mandatory forum selection clause, this action should be transferred to its proper venue: the United States District Court for the Northern District of Texas.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Allegations

Plaintiff alleges that "[t]hroughout 2025 and 2026, including as recently as May 2026,

[he] visited [Grok] and entered queries . . . .” Compl. ¶ 7. Plaintiff also alleges that xAI, through its operation of Grok, incorporated certain tracking technologies owned by Google, Meta, and TikTok into the website’s code. *See* Compl. ¶ 3. Plaintiff further alleges that when users entered queries into Grok, those communications and personally identifiable information were disclosed to third parties without users’ knowledge or consent. *Id.* ¶¶ 7, 10.

Based on these allegations, Plaintiff asserts four claims against xAI, on behalf of himself and putative class members: (1) “Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511”; (2) “Violation of the California Invasion of Privacy Act, Cal. Penal Code § 631”; (3) “Violation Of The California Invasion of Privacy Act, Cal. Penal Code § 632”; and, (4) “Invasion of Privacy Under California’s Constitution.” *Id.* ¶¶ 99–149.

### B.    xAI’s Terms of Service

Plaintiff repeatedly agreed to xAI’s Terms of Service in signing up for, interacting with, and continuing to use Grok. Murphy Decl. ¶¶ 7, 8. xAI is a private company that operates Grok, a conversational generative AI powered by xAI’s large language models, with which users like Plaintiff can interact. To use and interact with Grok, users must acknowledge and agree to a set of binding Terms of Service that “apply to [users’] use of Grok,” and are at all times publicly available on Grok.com, both to new and existing users. *Id*. ¶¶ 7–9, 17, 22. For example, at all relevant times, xAI’s Terms of Service have been prominently linked on Grok.com via a bold, white hyperlink against a black backdrop below where users enter their queries, informing users that “[b]y messaging Grok, you agree to our Terms and Privacy Policy,” both of which contain hyperlinks to xAI’s then-existing Terms of Service and Privacy Policy. *Id.* ¶ 28.

Users may, but are not required to, create accounts on Grok.com. Users who create accounts on Grok.com are notified of xAI’s Terms of Service prior to clicking “Sign Up.” *Id.* ¶ 24. On the sign-up page, users are shown a prominent banner informing them that “[b]y continuing, you agree to xAI’s Terms of Service and Privacy Policy,” both of which contain hyperlinks to xAI’s then-existing Terms of Service and Privacy Policy. *Id.* ¶¶ 25, 26. Plaintiff signed up for and created a Grok account in September 2025. *Id.* ¶ 13.

At all relevant times, the Terms of Service provided that “[b]y using our Service, you

acknowledge and agree to these Terms," that xAI "reserve[s] the right to modify these Terms," and that "[y]our continued use of the Service after any change to these Terms constitutes your acceptance of the new Terms." [1] *Id.* ¶¶ 16, 21, 18, 23. Furthermore, at all relevant times, the Terms of Service required all disputes to be brought ***exclusively*** in federal or state courts in the counties encompassed by the U.S. District Court for the Northern District of Texas. *Id.* ¶¶ 15, 20.[2]

## III.  LEGAL STANDARD

A forum selection clause "may be enforced through a motion to transfer under § 1404(a)." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). "[A] proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Id*. at 59–60 (internal quotations omitted). "[A] resisting party bears a heavy burden in overcoming a presumptively enforceable forum selection clause." *Martinez v. Bloomberg LP*, 740 F.3d 211, 219 (2d Cir. 2014) (citation modified). "[O]nly under extraordinary circumstances unrelated to the convenience of the parties should a motion to enforce a forum-selection clause be denied." *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018).

## IV.  ARGUMENT

The Court should transfer this action to the United States District Court for the Northern District of Texas under 28 U.S.C. § 1404(a) because (1) Plaintiff acknowledged and agreed to the mandatory, exclusive forum selection clause in at least two versions of xAI's Terms of Service; (2) the clause plainly encompasses the claims at issue; and (3) the clause is valid and enforceable.

---

[1] And at all relevant times, "Service" was defined broadly to include the "your use of Grok, Grokipedia, and xAI's other services for individuals, including associated applications and websites (collectively, the 'Service')." *Id.* ¶ 17.

[2] This Court may take judicial notice of xAI's Terms of Service because they are available on xAI's website (Grok.com) and their validity and authenticity cannot reasonably be in dispute. *See Lloyd v. Facebook, Inc.*, No. 21-cv-10075-EMC, 2022 WL 4913347, at *4 (N.D. Cal. Oct. 3, 2022).

**A. Plaintiff Agreed to xAI's Terms of Service, Including the Forum Selection Clause**

The Complaint's allegations confirm that Plaintiff necessarily agreed to at least two versions of xAI's Terms requiring litigation in Texas. *First,* Plaintiff signed up for and created a Grok account in September 2025, when he necessarily acknowledged and agreed to xAI's September 2025 Terms requiring litigation in the federal or state courts located in Tarrant County, Texas, where the Northern District of Texas is located. *Id.* ¶¶ 13, 24. *Second*, by his own admission, Plaintiff has also "visited the Website [Grok.com] and entered queries" since 2025 and has used Grok *as recently as May 2026*, thus agreeing to the Operative 2026 Terms also requiring litigation in Texas. Compl. ¶ 7. Indeed, at all relevant times, xAI has conditioned both the sign up for, and the use of, Grok on acceptance of xAI's Terms of Service, which are prominently linked on the Grok webpage via a bold white hyperlink against a black backdrop that is visible without any scrolling or navigation by the user. Murphy Decl. ¶¶ 26, 28 ("By messaging Grok, you agree to our Terms and Privacy Policy.").

Courts in this Circuit routinely hold that a plaintiff has received adequate constructive notice of terms and conditions containing forum selection clauses where those terms are hyperlinked and reasonably conspicuous, as is true here. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) ("[I]t is permissible to disclose terms and conditions through a hyperlink" if "the fact that a hyperlink is present [is] readily apparent."); *Li v. Amazon.com Servs. LLC*, No. 23-cv-00441-AMO, 2023 WL 8720669, at *6 (N.D. Cal. Dec. 18, 2023) (finding adequate notice of forum selection clause where website included text stating, "[b]y placing your order, you agree to Amazon's privacy notice and conditions of use" and those terms "appear in blue, hyperlinked text"); *Adibzadeh v. Best Buy, Co. Inc.*, No. 20-cv-06257-JSW, 2021 WL 4440313, at *5 (N.D. Cal. Mar. 2, 2021) (finding consent to Best Buy's website's terms where "Sign In" button was followed by: "By continuing you agree to our Terms and Conditions"); *White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*, 407 F. Supp. 3d 931, 945 (S.D. Cal. 2019) ("[t]he conditions of a form contract may be enforceable

DEF. X.AI LLC'S MOTION TO TRANSFER THE CASE TO THE NORTHERN DISTRICT OF TEXAS

even if not read or negotiated by the challenging party, so long as that party was afforded the opportunity to do so.").

At all relevant times, xAI's Terms of Service provided that xAI may revise them and that "[y]our continued use of the Service after any change to these Terms constitutes your acceptance of the new Terms of Service." Murphy Decl. ¶¶ 18, 23. Plaintiff thus necessarily agreed to the xAI's Terms of Service—including its mandatory forum selection clause—when he created his Grok account in September 2025 and continued to use Grok as recently as May 2026. *See* Compl. ¶ 7; Murphy Decl. ¶¶ 13, 19; *Eliza Labs*, 2025 WL 3003766, at *4 (plaintiffs assented to Texas forum selection clause "by acknowledging receipt and continuing to use the X platform"); *Doe*, 2025 WL 3500543, at *6 (substantially similar); *Williams*, 2025 WL 2801626, at *3 ("Plaintiff has voluntarily agreed to the [Texas] forum selection clause when he created and continued to use his X account").

In sum, there can be no doubt that Plaintiff was on notice of xAI's Terms of Service, voluntarily assented to them, and should be bound by the forum selection clause he agreed to.

**B.  xAI's Terms of Service's Forum Selection Clause Encompasses All Claims**

All of Plaintiff's claims fall squarely within the broad scope of the forum selection clause contained in xAI's Terms of Service. At all relevant times, the Terms of Service first explain that they "apply to your use of Grok, Grokipedia, and xAI's other services for individuals, including associated applications and websites (collectively, the 'Service')." Murphy Decl. ¶¶ 17, 22. The Terms further state that "[b]y using our Service, you acknowledge and agree to these Terms." *Id.* ¶¶ 16, 21. Then, the forum selection clauses, in both the September 2025 Terms and Operative 2026 Terms, provide:

> [A]ll claims or disputes between You and xAI shall be governed by the laws of Texas without regard to conflict of law principles, and ***shall be brought exclusively in the state and federal courts in Tarrant County, Texas,*** and the parties hereby irrevocably consent to the exclusive jurisdiction and venue . . . .

*Id.* ¶ 20 (quoting the September 2025 Terms) (emphasis added).

> [A]ll disputes related to these Terms, the Service . . . or your or others' use of the Service or the complete or partial termination thereof – ***shall be brought and must proceed exclusively in the federal U.S. District Court for the Northern District***

*of Texas or state courts located in Wichita County or Tarrant County, Texas, United States,* and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum.

*Id.* ¶ 15 (quoting the Operative 2026 Terms) (emphasis added).

"A clause that covers disputes *relating to* an agreement," like xAI's Terms of Service's forum selection clause, "is broad[] and covers any dispute with some logical or causal connection to the agreement." *Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1027 (N.D. Cal. 2020) (emphasis added); *accord Sun*, 901 F.3d at 1086 (a "dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract").

Here, all claims indisputably "relate[] to or aris[e] from" Plaintiff's "use of the Service"—*i.e.,* Grok. Murphy Decl. ¶ 15 (quoting the Operative 2026 Terms). The Complaint chiefly complains of certain tracking technologies owned by Google, Meta, and TikTok allegedly embedded into Grok's code (Compl. ¶ 3), and that users' queries were intercepted and disclosed to the third parties without users' knowledge or consent (*id.* ¶¶ 7, 10). All claims arise from some combination of these allegations. *See id.* ¶¶ 99–149. Plaintiff's claims therefore are a "dispute" with xAI "related to these Terms, [and] the Service" or "your or others' use of the Service." *See* Murphy Decl. ¶ 15. Thus, xAI's Terms of Service's forum selection clause plainly encompasses Plaintiff's claims. *See, e.g.*, *Eliza Labs*, 2025 WL 3003766, at *5 ("broad venue clauses cover noncontractual claims that fall within the scope of the forum selection clause[,]" and transferring claims to Texas under X's forum selection clause); *Doe*, 2025 WL 3500543, at *7 (transferring claims to Texas because "Plaintiff challenges conduct that falls well within the types of disputes covered by X's terms of service").

**C.    xAI's Terms of Service's Forum Selection Clause Is Valid and Enforceable**

"Plaintiffs bear a heavy burden in showing a forum selection clause is unenforceable. They must make a 'strong showing' of either (i) fraud or overreaching, (ii) contravention of a strong public policy, or (iii) such 'grave difficult[y] and inconvenien[ce]' in having the trial in the contracted forum that they would, 'for all practical purposes be deprived of [their] day in court.'" *Eliza Labs*, 2025 WL 3003766, at *4 (internal citation omitted; quoting *Sun*, 901 F.3d at 1088); *accord Sun*, 901 F.3d at 1088 ("Only under extraordinary circumstances unrelated to

DEF. X.AI LLC'S MOTION TO TRANSFER THE CASE TO THE NORTHERN DISTRICT OF TEXAS

the convenience of the parties should a motion to enforce a forum-selection clause be denied."). None of these factors are present here. xAI's forum selection clause is valid and enforceable.

*First*, none of Plaintiff's claims calls into question whether the forum selection clause was the product of fraud or overreaching. In any event, "that a contract is one of adhesion does not alone make it unconscionable," and "California appellate courts have implemented this broader policy [approving forum selection clauses] and enforced forum selection clauses in adhesion contracts, particularly in a non-arbitration context." *Rostami v. Hypernet Inc.*, No. 22-cv-01813-EJD, 2023 WL 2717262, at *7 (N.D. Cal. Mar. 29, 2023); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 37–38 (2021) (finding no substantive or procedural unconscionability in Twitter's terms of service); *see also Intershop Commc'ns AG v. Super. Ct.*, 104 Cal. App. 4th 191, 201–02 (2002) ("a contract of adhesion is nonetheless a valid and existing contract").

*Second*, enforcing the forum selection clause would not contravene a strong public policy of California. The question "is not whether California has a strong public interest in regulating alleged misconduct occurring within its borders, but whether enforcement of the forum selection clause 'would contravene a strong public policy of the forum in which the suit is brought.'" *Bauer v. Tacey Goss, P.S.*, No. C 12-00876-JSW, 2012 WL 2838834, at *2 (N.D. Cal. July 10, 2012) (rejecting argument that "any forum selection clause requiring California-law claims to be adjudicated in a different state would violate California's strong public policy") (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). Under California law, "it is perfectly reasonable" for defendants with nationwide operations "to limit the fora in which they are potentially subject to suit." *Lu v. Dryclean-U.S.A. of Cal., Inc.*, 11 Cal. App. 4th 1490, 1493 n.2 (1992) (affirming dismissal of dispute concerning California laundromat given forum selection clause, despite allegations that "(1) both of the plaintiffs reside in California, (2) neither plaintiff has ever visited Florida in connection with business of the drycleaning franchise, and (3) the Agreement was negotiated at [defendant's] offices in [California]"). Plaintiff cannot carry his burden of establishing that transfer of this action would contravene a "strong public policy" in California because he retains the ability to seek remedies under Texas law (as he bargained for by agreeing to xAI's Terms of Service). *LaCross v. Knight*

*Transp., Inc.*, 95 F. Supp. 3d 1199, 1205–06 (C.D. Cal. 2015); *see also Li*, 2023 WL 8720669, at *6 (plaintiffs failed to meet their burden of establishing that the presence of a choice of law provision meant that the transferee court would not uphold plaintiffs' non-waivable rights).

*Third*, Plaintiff cannot plausibly claim that trial in the Northern District of Texas will be so gravely difficult and inconvenient that he will be deprived of his day in court. As the Ninth Circuit has recognized, Supreme Court jurisprudence suggests this factor "is difficult to satisfy" because "[w]here the parties have agreed to a forum-selection clause, they 'waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.'" *Sun*, 901 F.3d at 1091 (quoting *Atl. Marine*, 571 U.S. at 64). Thus, this factor is inapplicable "even when the contractually selected forum may afford the plaintiff[] less effective remedies than they could receive in the forum where they filed suit." *Id*. at 1092. In any event, the Northern District of Texas is located in the Dallas-Fort Worth metropolitan area, which is easily accessible given that "DFW Airport has service to more nonstop destinations than any other airport in North America." *Dallas-Fort Worth International Airport*, Wikipedia, The Free Encyclopedia, https://en.wikipedia.org/wiki/Dallas_Fort_Worth_International_Airport (last visited June 15, 2026).

*Finally*, in the past several months alone, four federal judges—including two from this District—have enforced a substantially similar forum selection clause (for xAI's affiliate X) is valid and enforceable and transferred cases to the Northern District of Texas. *See Doe*, 2025 WL 3500543, at *4, *7–8 (rejecting arguments that no valid agreement existed or that "exceptional" and "unusual" circumstances justified disregarding X's terms); *Eliza Labs*, 2025 WL 3003766, at *6 (voluntary agreement to X's terms of service "undermine[s] any potential arguments as to fraud or overreaching[,]" "enforcing the forum selection clause would not contravene a strong public policy of California[,]" and litigating in Texas does not impose "grave inconvenience"); *Taddeo-Waite*, 2025 WL 3237422, at *2 (finding "no fraud, overreaching, or fundamental unfairness" in X's terms); *Williams*, 2025 WL 2801626, at *3 ("no suggestion" of "fraud or overreaching" because "Plaintiff has voluntarily agreed to the

DEF. X.AI LLC'S MOTION TO TRANSFER THE CASE TO THE NORTHERN DISTRICT OF TEXAS

forum selection clause when he created and continued to use his X account[,]" and "litigating in the Northern District of Texas does not deprive plaintiff of his day in court"). These courts join a host of others that have transferred claims to the forum designated in such a clause over the years. *See, e.g.*, *Yuksel v. Twitter Inc.*, No. CV-21-00137-TUC-RM, 2022 WL 4367619, at *3 (D. Ariz. Sept. 21, 2022) ("The Court agrees with the findings of other district courts that Twitter's forum selection clause is valid and enforceable.").

Because Plaintiff cannot make any showing, much less a "strong showing," that xAI's Terms of Service's forum selection clause is unenforceable, this matter should be transferred to the United States District Court for the Northern District of Texas.[3]

## V.    **CONCLUSION**

For the reasons stated above, xAI respectfully requests that the Court transfer this action to the United States District Court for the Northern District of Texas.

Respectfully submitted,

Dated:  June 15, 2026                    WILLENKEN LLP

By:   */s/ Kenneth M. Trujillo-Jamison*
        Kenneth M. Trujillo-Jamison
        Attorneys for Defendant X.AI LLC

---

[3] Should the Court consider public interest factors, "those rarely override the parties' agreement[,]" and at any rate, also favor transfer to Texas. *See Doe*, 2025 WL 3500543, at *4 ("Considering the goal of § 1404 (a) . . . the Court finds that the Northern District of Texas has a greater capacity to expeditiously resolve Plaintiff's motion.").

DEF. X.AI LLC'S MOTION TO TRANSFER THE CASE TO THE NORTHERN DISTRICT OF TEXAS