Kenneth M. Trujillo-Jamison (Bar No. 280212)
ktrujillo-jamison@willenken.com
707 Wilshire Blvd., Suite 4100
Los Angeles, California 90017
Telephone: (213) 955-9240
Facsimile: (213) 955-9250

Attorneys for Defendant X.AI LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTIN SKAGGS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>X.AI, LLC,<br><br>Defendant. | Case No.: 5:26-cv-04550-BLF<br><br>**DEFENDANT X.AI LLC'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date: January 21, 2027<br>Time: 9:00 a.m.<br>Ctrm: 1<br><br>Hon. Beth Labson Freeman<br><br>Complaint Filed: May 14, 2026 |

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 1

II. FACTS ........ 3

A. Grok and xAI's Terms of Service ........ 3

1. The Terms Allow xAI to "Use, Store, Modify, Distribute, Reproduce, [and] Publish" Users' Grok Conversations for "Any Purpose" ........ 4

2. The Terms Assign xAI Sole Ownership of All "Usage Data" and Authorize xAI to Share "Analytics" Data "With Third-Parties" ........ 4

B. Plaintiff Consents to xAI's Terms of Service, Which Authorize the Challenged Conduct ........ 5

C. The Tracking-Pixel Technologies at Issue ........ 5

D. The LeakyLM Report ........ 6

E. Plaintiff's Allegations ........ 6

III. LEGAL STANDARD ........ 8

IV. ARGUMENT ........ 8

A. All of Plaintiff's Claims Fail Because He Does Not Adequately Allege That Any of the Service Providers Received—Much Less Read—His Communications ........ 8

B. All Claims Require *At Least* Acquisition of the Contents of Communications ........ 9

C. The LeakyLM Report Claims Only Transmission of Record Information—Not the *Contents* of Plaintiff's (or Anyone's) Communications ........ 10

D. The LeakyLM Report's Admitted Lack of Evidence That Any Tracker Read Conversations Defeats Plaintiff's CIPA and Constitutional Claims ........ 12

E. Plaintiff's Wiretap Act and CIPA Claims Fail Under the Party Exception ........ 14

F. Plaintiff's Consent to xAI's Terms of Service Is Fatal to All of His Claims ........ 16

G. Plaintiff's Agreement to xAI's Choice-of-Law Provision Independently Precludes His CIPA and Constitutional Claims ........ 18

H. Each of Plaintiff's Claims Independently Fails to State a Claim ........ 19

1. Plaintiff's Wiretap Act and CIPA Claims Fail for Lack of a Contemporaneous Acquisition ........ 20

2. Plaintiff Fails to State a Claim Under Any Clause of CIPA § 631 ............21

3. Plaintiff's CIPA § 632 Claim Independently Fails for Lack of a Confidential Communication ......................................................................22

4. Plaintiff's California Constitution Claims Fail ..........................................24

I. Leave to Amend Should Be Denied.............................................................25

V. CONCLUSION ..............................................................................................25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 8, 17, 20

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .... 24

*Bailey v. Bailey*,
2008 WL 324156 (E.D. Mich. Feb. 6, 2008) .... 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .... 8

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .... 16

*Brown v. Learfield Commc'ns, LLC*,
2024 WL 3676709 (W.D. Tex. June 27, 2024) .... 14, 16

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .... 23

*Camplisson v. Adidas Am., Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025) .... 6

*Cheung v. Slickdeals, LLC*,
2026 WL 1872831 (C.D. Cal. June 29, 2026) .... 24

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) .... 23

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .... 22

*Dawson v. Meta Platforms, Inc.*,
2026 WL 2137134 (N.D. Cal. July 23, 2026) .... 12

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .... 1, 13

*Doe v. Amgen, Inc.*,
2024 WL 575248 (C.D. Cal. Jan. 29, 2024) .... 12

*Faulkner v. ADT Sec. Servs., Inc.*,
706 F.3d 1017 (9th Cir. 2013) .... 18

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .... 13, 20, 22

*Gibson v. Portland*,
165 F.4th 1265 (9th Cir. 2026) .... 21

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) ........ 13

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 24, 25

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
146 S. Ct. 1391 (2026) ........ 2, 13

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ........ 17

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) ........ 24

*In re Carrier IQ*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 15

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 21

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........ 18, 24

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 11

*Ind. Lumbermens Mut. Ins. Co. v. W. Or. Wood Prods., Inc.*,
268 F.3d 639 (9th Cir. 2001) ........ 19

*J.S. v. Spring Fertility Holdings*,
2026 WL 1483490 (N.D. Cal. May 27, 2026) ........ 20

*James v. Allstate Ins. Co.*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) ........ 22

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........ 8

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ........ 6

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ........ 9, 20

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ........ 16

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 18, 24

*Mastel v. Miniclip S.A.*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ........ 20

*Nedlloyd Lines B.V. v. Super. Ct.*,
3 Cal. 4th 459 (1992) ........ 19

*Noel v. Hall*,
568 F.3d 743 (9th Cir. 2009) .......... 9, 14

*Parziale v. HP, Inc.*,
2020 WL 5798274 (N.D. Cal. Sept. 29, 2020) .......... 6

*Rand v. Eyemart Express, LLC*,
2025 WL 1519726 (N.D. Tex. May 27, 2025) .......... 10

*Riley v. St. Luke's Episcopal Hosp.*,
355 F.3d 370 (5th Cir. 2004) .......... 10

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 23

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .......... 20

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) .......... 25

*Silver v. Stripe*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) .......... 17

*Sisti v. Bosley Inc.*,
2026 WL 1223927 (C.D. Cal. Apr. 27, 2026) .......... 16

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) .......... 8

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) .......... 8, 10, 17, 25

*Stevens v. TD Bank, N.A.*,
2025 WL 1779164 (D.N.J. June 27, 2025) .......... 12

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999) .......... 15

*Sweat v. Houston Methodist Hosp.*,
2025 WL 2697111 (S.D. Tex. Sept. 22, 2025) .......... 16

*Tavernetti v. Super. Ct.*,
22 Cal. 3d 187 (1978) .......... 9, 21

*Timothee v. Meta Platforms, Inc.*,
2026 WL 1130363 (N.D. Cal. Apr. 27, 2026) .......... 18

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 22

*Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*,
457 F.3d 1106 (9th Cir. 2006) .......... 19

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .......... 6

*Walsh v. Dollar Tree Stores, Inc.*,
2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) .......... 11

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) .......... 14

*Weston v. Lefiti*,
2024 WL 4579237 (9th Cir. Oct. 25, 2024) .......... 16

*Williams v. DDR Media, LLC*,
2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) .......... 24

*Williams v. What If Holdings*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 14, 15, 21

*Yuksel v. Twitter, Inc.*,
2022 WL 16748612 (N.D. Cal. Nov. 7, 2022) .......... 5, 6

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 1

Fed. R. Civ. P. 15 .......... 25

**Statutes**

18 U.S.C. § 2511 .......... 14, 15, 17

Cal. Civ. Code § 3515 .......... 16

Cal. Penal Code § 631 .......... *passim*

Cal. Penal Code § 632 .......... *passim*

Tex. Civ. Prac. & Rem. Code § 123.001 .......... 23

Tex. Civ. Prac. & Rem. Code § 123.001–.004 .......... 19

Tex. Civ. Prac. & Rem. Code § 123.002 .......... 9

Tex. Penal Code § 16.02 .......... 23

## NOTICE OF MOTION AND MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on January 21, 2027 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1 of the United States District Court for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, California 95113, before the Honorable Beth Labson Freeman, Defendant X.AI, LLC ("xAI" or "Defendant") will and hereby does move this Court for an order dismissing the Class Action Complaint ("Complaint") of Plaintiff Austin Skaggs ("Plaintiff") with prejudice under Federal Rule of Civil Procedure 12(b)(6). This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the declarations of Nicole Hollander, Barry Murphy, and Kenneth M. Trujillo-Jamison (and the exhibits thereto, where applicable), all pleadings and papers on file in this action, any matters of which the Court may take judicial notice, and such other written and oral argument as may be presented to the Court.

## STATEMENT OF RELIEF REQUESTED

xAI seeks an order dismissing Plaintiff's Complaint in its entirety with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

"This is another pixel case."[1] Like more than 5,000 plaintiffs before him,[2] Plaintiff Austin Skaggs seeks to transform routine website analytics to which he consented into federal and state "wiretapping." Plaintiff alleges that Grok.com, xAI's website, incorporates Google Analytics, Meta Pixel, and TikTok Pixel analytics tools—among the most ubiquitous on the internet—and that such tools converted his voluntary use of a public website into violations of

---

[1] *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 836 (N.D. Cal. 2024).

[2] *See* Fisher Phillips, *Digital Wiretapping Litigation Map*, https://www.fisherphillips.com/en/resources-and-innovation/trackers-and-maps/wiretapping-litigation-map (last visited Aug. 10, 2026) (reporting more than 5,000 nationwide pixel cases—more than 3,000 in California alone—"alleging a privacy claim involving the use of digital tracking technologies, such as cookies, pixels, and beacons").

the Wiretap Act, California Invasion of Privacy Act ("CIPA"), and California's constitution and common law. For at least five reasons, Plaintiff fails to state any of these claims.

*First*, Plaintiff fails to plausibly allege a fundamental fact on which all his claims hinge: that Google, Meta, or TikTok (the "Service Providers")[3] *received*, much less *read*, the *contents* of his Grok conversations. The centerpiece of his Complaint—that xAI disclosed the "full transcript" of users' conversations—rests entirely on a third-party report that admits "we do not yet have evidence that conversations are read by the trackers" (*i.e.*, Service Providers), and instead describes a "***potential*** risk" that sharing URLs "***potentially*** allows the trackers to access user conversations and their content." Declaration of Kenneth M. Trujillo-Jamison ("Trujillo-Jamison Decl.") Ex. A at 1 (emphasis added). The Supreme Court has repeatedly foreclosed such theories of *potential* liability, because the "plausibility standard 'asks for more than a sheer *possibility* that a defendant has acted unlawfully.'" *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, 1399 (2026) (emphasis added).

*Second*, the party exception defeats Plaintiff's Wiretap Act claim and his two CIPA claims. Every communication at issue is one Plaintiff voluntarily sent to xAI; a party cannot "eavesdrop" on its own conversation. Thus, the only theory left against xAI is derivative—that it somehow "aided" or "permitted" the third-party Service Providers' eavesdropping. But the Complaint's failure to plead a predicate violation by the Service Providers forecloses any aiding and abetting liability against xAI as a matter of law. Moreover, the Wiretap Act imposes no civil secondary liability, and CIPA § 632 contains no aiding-and-abetting provision at all. Nor can the "crime-tort" exception save Plaintiff's claims.

*Third*, even if Plaintiff could adequately allege his Grok transcripts were received and read by the Service Providers (he cannot), he consented to exactly that, and therefore his claims fail as a matter of law. At all relevant times, xAI's Terms of Service (the "Terms") granted xAI

---

[3] The Complaint refers to Google, LLC, Meta Platforms, Inc., and TikTok, Inc. as the "Third Parties." Compl. ¶ 3. Because Plaintiff describes them as providers of analytics services that xAI deployed on Grok.com (Compl. ¶¶ 3, 22, 78), this brief refers to them as Service Providers.

an "irrevocable, perpetual . . . and worldwide right" to "use, copy, store, . . . distribute, reproduce, [and] publish" Plaintiff's Grok conversations "**for any purpose**." The Terms further assign xAI sole ownership of Plaintiff's "Usage Data"—all "technical, usage, and/or related information"—which xAI may use to "monitor your usage of [Grok.com]," "for research and analytics" and to "**share analytics** . . . **with third-parties**." Under the Wiretap Act's one-party consent rule, CIPA's all-party consent rule, and the reasonable-expectation-of-privacy requirement of California law, Plaintiff's consent defeats all of his claims.

*Fourth*, by agreeing to xAI's Terms, Plaintiff also agreed that "[t]he laws of the State of Texas, excluding its choice of law provisions, will govern . . . **any dispute** that arises between you and us." That voluntary choice of Texas law precludes Plaintiff's California-law claims—Counts II–IV—whether or not this case is transferred to Texas in connection with xAI's pending motion to transfer (Dkt. No. 17, the "Transfer Motion").

*Finally*, each claim fails on the merits. Plaintiff's Wiretap Act and CIPA claims fail for lack of a contemporaneous acquisition of any communication. Plaintiff's CIPA § 631 claim satisfies none of the statute's four clauses. Plaintiff's CIPA § 632 claim fails because his voluntary internet communications with an AI chatbot—to which Plaintiff granted a broad license to "store," "distribute," and "reproduce" "for any purpose"—are not "confidential" communications. And Plaintiff falls well short of the "high bar" required to plead a California constitutional or intrusion claim, because routine, contractually authorized website analytics are neither a "serious invasion" of a protected privacy interest nor "highly offensive" conduct.

For all these reasons, the Court should dismiss the Complaint in its entirety with prejudice.

## II. FACTS[4]

### A. Grok and xAI's Terms of Service

xAI owns and operates Grok, a leading "AI chatbot and large language model" hosted on the Grok.com website, through which users can "enter queries on virtually any topic . . . and

---

[4] Unless otherwise indicated, the facts recited herein are based on the allegations of the Complaint and are accepted as true only for purposes of this motion.

receive conversational responses." Compl. ¶¶ 19–20. Plaintiff's use of Grok.com is governed by xAI's Terms of Service (the "Terms"), which contain, among other things, the following disclosures and provisions.

1. The Terms Allow xAI to "Use, Store, Modify, Distribute, Reproduce, [and] Publish" Users' Grok Conversations for "Any Purpose"

In a section of the Terms titled "Our Use of User Content," xAI specifically disclosed—and Plaintiff agreed—that:

> You grant, an irrevocable, perpetual, transferable, sublicensable, royalty-free, and worldwide right to xAI to use, copy, store, modify, distribute, reproduce, publish, display in public forums, list information regarding, make derivative works of, and aggregate your User Content and derivative works thereof **for any purpose,** including but not limited: (i) to maintain and provide the Service; (ii) to improve our products and the Service and for our other business purposes, such as data analysis . . . .

Declaration of Barry Murphy ("Murphy Decl.") ¶ 11 & Exs. A, B & C at 2 (emphasis added). The Terms expressly define "User Content" to include any "text, audio, images, video, code, files, folders, drives, etc." that a user either enters into Grok.com (input), or receives from Grok.com in response (output). *Id.* A user's input into Grok.com, combined with Grok.com's output, forms a user's "full transcript of the conversation"—which is the very content on which Plaintiff bases his claims. Compl. ¶¶ 21, 75, 80, 85.

2. The Terms Assign xAI Sole Ownership of All "Usage Data" and Authorize xAI to Share "Analytics" Data "With Third-Parties"

In addition to the broad license set forth above, the Terms—in a section titled "Usage data relating to our Service"—disclose that xAI may "monitor your usage of [Grok.com]" including for "analytics" purposes and "may collect . . . diagnostic, technical, usage, and/or related information, including information about your computers, mobile devices, systems, and software (collectively, 'Usage Data')":

> All Usage Data is and will be owned solely and exclusively by us, and, to the extent any ownership rights in or to the Usage Data vest in you, you hereby assign to us all rights (including intellectual property rights), title, and interest in and to the same. Accordingly, we may use, maintain, and/or process the Usage Data or any portion thereof for any lawful purpose, including, without limitation: (a) to provide and maintain the Service; (b) to improve or develop our products and services; (c) to monitor your usage of the Service; (d) for research and analytics, including, without

> limitation, data analysis, identifying usage trends, and/or customer or market research; and (e) **<u>to share analytics and other derived Usage Data with third-parties</u>**.

Murphy Decl. ¶ 12 & Ex. A at 2, Ex. B at 2–3, & Ex. C at 2 (emphasis added).

### B. Plaintiff Consents to xAI's Terms of Service, Which Authorize the Challenged Conduct

Plaintiff alleges that "[t]hroughout 2025 and 2026, including as recently as May 2026, [he] visited [Grok.com] and entered queries." Compl. ¶ 7. By Plaintiff's own allegation, Grok.com is an account-based service: each user's conversations are linked to that user, and the report on which the Complaint relies alleges data collection at Grok.com's "account login page," including transmission of "a 'hashed' version of the users' email address . . . identifying the user." *Id.* ¶¶ 21–23, 86. Accordingly, Plaintiff's creation of a Grok.com account, and his subsequent use of Grok, was at all times governed by xAI's Terms of Service.[5] Each version of those terms provides that "[b]y using our Service[s], you acknowledge and agree to these Terms." *See* Murphy Decl. ¶ 9. Three successive versions of the Terms span that period—Terms effective June 9, 2025, November 4, 2025, and April 10, 2026—and each version grants xAI identical User Content and Usage Data rights. *Id.* ¶¶ 6–8 & Exs. A, B, and C (Terms effective June 9, 2025, Nov. 4, 2025 & Apr. 10, 2026, respectively). Each version likewise provides that "continued use of the Service after any change to these Terms constitutes . . . acceptance of the new Terms of Service." *Id.* Exs. A, B & C at 4.

### C. The Tracking-Pixel Technologies at Issue

The technologies Plaintiff challenges are routine website analytics tools commonly known as tracking pixels. "Tracking pixels are small, almost-invisible image[s] . . . embedded

---

[5] xAI's Terms (Murphy Decl. Exs. A–C) are "properly subject to judicial notice because they are publicly available webpages and their contents are not subject to reasonable dispute." *See, e.g.*, *Yuksel v. Twitter, Inc.*, 2022 WL 16748612, at *2 (N.D. Cal. Nov. 7, 2022) (collecting cases judicially noticing technology company terms of service and "publicly accessible webpages").

in a website or an email to track a user's activities. When a user visits a website, the website's code installs the tracker into the user's browser and can, at that point, track user interactions on its platform in order to place targeted advertisements." *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1100 (S.D. Cal. 2025).

**D. The LeakyLM Report**

The Complaint's core allegation—that xAI disclosed the "full transcript" of users' Grok conversations to each Service Provider—is drawn entirely from a May 2026 third-party report titled "Your AI Assistant Is Leaking Your Conversations" (the "LeakyLM Report" or "Report"). Compl. ¶¶ 74–89; *id.* ¶ 74 n.67.[6] As set forth *infra* (§ IV.C), the Report itself identifies only a "potential risk" that trackers can access, and thus read, user conversations—and admits it has no evidence any tracker ever did so. Trujillo-Jamison Decl. ¶ 2 & Ex. A at 1.

**E. Plaintiff's Allegations**

Plaintiff, a California resident, alleges that "[t]hroughout 2025 and 2026, including as recently as May 2026, [he] visited [Grok.com] and entered queries related to sensitive information about finances, investment strategy, private health conditions, business projects,

---

[6] This Court may incorporate by reference or, in the alternative, take judicial notice of, Exhibit A to the Trujillo-Jamison Declaration, which is a printout of the Report as of May 14, 2026, when Plaintiff filed his Complaint relying on the Report. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (a court may incorporate a document by reference "if the plaintiff refers extensively to the document or the document forms the basis for the plaintiff's claim"); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation-by-reference doctrine applies with "equal force to internet pages"). That Exhibit A is an "archived webpage[] obtained from the Internet Archive's Wayback Machine does not change the analysis." *Yuksel v. Twitter, Inc.*, 2022 WL 16748612, at *3 (N.D. Cal. Nov. 7, 2022) (taking judicial notice of archived webpages from the Wayback Machine); *see Parziale v. HP, Inc.*, 2020 WL 5798274, at *3 (N.D. Cal. Sept. 29, 2020) (same conclusion) (collecting cases).

and other private information." Compl. ¶¶ 6–7. He further alleges that he has "active" Facebook and Google accounts. *Id.* ¶¶ 8–9.

Central to Plaintiff's Complaint is his allegation that Grok.com is "designed such that each query and resulting conversation, including every question by the user and answer by Grok, is assigned a unique URL." *Id.* ¶ 21. From this premise, Plaintiff claims that "any party that Grok shares the URL with is able to obtain a full transcript of the conversation." *Id.*

Plaintiff concludes that xAI "disclosed nearly every piece of information provided by consumers to [the Service Providers] by incorporating technology owned by the [Service Providers]"—*i.e.*, Google Analytics, the Meta (Facebook) Pixel, and the TikTok Pixel—"into the code of [Grok.com]." *Id.* ¶¶ 3, 22–72. Plaintiff alleges that, by incorporating this technology into Grok.com, "Defendant aided and assisted [the Service Providers] with intercepting Plaintiff's communications, including those that contained personally identifiable information ('PII'), and related confidential information," and that it did so "without Plaintiff's knowledge, consent, or express written authorization." *Id.* ¶ 10; *see also* ¶¶ 111, 125–130.

Plaintiff also alleges in boilerplate fashion that "[w]hen a user enters information into Grok, [xAI] discloses that information to" each Service Provider "in real time" (Compl. ¶¶ 73, 79, 84), and that xAI "conspires with" the Service Providers "to intercept the full transcript of the users' conversations by sharing the conversation URL, along with the page title" and, as to Google, certain "identifying metadata." *Id.* ¶¶ 75, 80, 85. Plaintiff further claims that xAI transmits an identifying cookie or hashed identifier to each Service Provider, and that each Service Provider "receives each conversation" via its respective tool and "immediately views the information contained therein." *Id.* ¶¶ 76, 78, 81, 83, 86, 89. As to shared conversations, these allegations claim the TikTok Pixel "reads and transmits" certain metadata that "expos[es] not just the conversation URL and topic, but actual message text." *Id.* ¶ 85.

Plaintiff purports to represent a nationwide class of "all persons who, during the class period, had their personally identifiable information and communications with Grok disclosed to third party entities, as a result of using the Website," and a "California Subclass" of those who did so "while in California." *Id.* ¶¶ 90–91. He asserts four causes of action: (1) violation of

the Wiretap Act, 18 U.S.C. § 2511, *et seq.* (Count I); (2) violation of CIPA, Cal. Penal Code § 631 (Count II); (3) violation of CIPA, Cal. Penal Code § 632 (Count III); and (4) invasion of privacy and intrusion upon seclusion (Count IV). *Id.* ¶¶ 99–149. Plaintiff seeks injunctive relief, an indeterminate amount of damages, including, but not limited to, actual, consequential, statutory, and punitive damages, attorneys' fees, and prejudgment interest. *Id.*, Prayer for Relief.

## III. LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is proper when the complaint either: (1) lacks a cognizable legal theory; or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) (citation omitted). To survive dismissal, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In ruling on a motion to dismiss, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998), and may consider documents incorporated into the complaint by reference and matters subject to judicial notice, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## IV. ARGUMENT

### A. All of Plaintiff's Claims Fail Because He Does Not Adequately Allege That Any of the Service Providers Received—Much Less Read—His Communications

Plaintiff's Complaint fails at the threshold because *all* of his claims depend on a single unsupported conclusion: that the Service Providers actually received—and, for his CIPA claims, actually read—the contents of his communications with Grok. But the Complaint is devoid of well-pled allegations that the Service Providers ever received—much less read—the content of Plaintiff's communications. Thus, contrary to Plaintiff's allegations, there was no interception, eavesdropping, or disclosure for xAI to have "aided" or "assisted," and each claim fails on that basis alone. *See* Compl. ¶¶ 10, 111, 125–130. This is so under both Texas law, which the parties agreed applies to Plaintiff's claims, and under California law which Plaintiff invokes.

### B. All Claims Require *At Least* Acquisition of the Contents of Communications

All of Plaintiff's claims require that an unauthorized third party acquire the contents of Plaintiff's communications. His California claims require even more: an actual or attempted reading of those contents. Plaintiff pleads neither.

"The Wiretap Act . . . prohibits only 'interceptions' of electronic communications,"[7] where "intercept" means the "aural or other acquisition of the contents" of a communication. 18 U.S.C. § 2510(4), (8) ("contents" means "any information concerning the substance, purport, or meaning of that communication"); *see Noel v. Hall,* 568 F.3d 743, 749 (9th Cir. 2009) (acquisition occurs "when the contents of a wire communication are captured").[8] CIPA demands even more: Section 631(a)'s operative clause reaches only one who "reads, or attempts to read, or to learn the contents or meaning" of a communication "while the same is in transit." Cal. Penal Code § 631(a); *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 190 (1978) (statute prohibits "interception of wire communications and disclosure of the contents of such intercepted communications"). Receipt of record data *about* a communication—*i.e.*, URLs and metadata—is not a reading of its contents.

Further, Plaintiff's derivative theory—that xAI "aid[ed]" and "conspir[ed]" with the Service Providers "to unlawfully do" those acts (Compl. ¶¶ 125–30)—presupposes a primary CIPA violation that is absent from the Complaint. *See infra* § IV.E; *accord* Tex. Civ. Prac. & Rem. Code § 123.002(a)(1)–(2) (prohibiting use of information "*obtained by interception* of the communication"). CIPA § 632(a) likewise requires that a person "eavesdrop[] upon or record[]" a confidential communication, meaning that a party who receives only record information *about* a communication has neither overheard nor recorded it. In short, whether "acqui[ring]" under the Wiretap Act, "reading" under CIPA § 631, or "eavesdropping" under CIPA § 632, Plaintiff

---

[7] *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002) (emphasis added).

[8] Any use and disclosure theory likewise requires that the person who disclosed the content knew, or had reason to know, the information was "obtained through the interception" of a communication. *Id.* § 2511(1)(c)–(d).

must plausibly allege that one of those actions *actually occurred*. A third party that is not alleged to have received—much less read—the contents of any communications is not alleged to have done any of those things.

Plaintiff's state law claims likewise require an actual, intentional intrusion, not the mere risk of one. *Doe I*, 741 F. Supp. 3d at 839–41 (dismissing California privacy claims where plaintiffs "allege[d] hypothetical examples . . . of how various product features could be used in ways that could result in privacy violations" rather than "how the plaintiffs' various providers are actually using" them); *see also Rand v. Eyemart Express, LLC*, 2025 WL 1519726, at *4–5 (N.D. Tex. May 27, 2025) (dismissing claims where plaintiffs failed to plausibly allege that a website's pixel "*actually* sent anything to Meta").

### C. The LeakyLM Report Claims Only Transmission of Record Information—Not the *Contents* of Plaintiff's (or Anyone's) Communications

Plaintiff relies on the LeakyLM Report to conclude that the Service Providers received and read the content of user communications with Grok. *E.g.*, Compl. ¶¶ 75, 78 (alleging "[t]he [R]eport found" that xAI "conspires with Google to intercept the full transcript" of users' conversations, and that "Google receives each conversation . . . and immediately views" it); *id.* ¶¶ 80, 83 (same as to Meta); *id.* ¶¶ 85, 89 (same as to TikTok). But the LeakyLM Report claims no transmission of the contents of any conversation to *any* Service Provider; to the contrary, it expressly disclaims any evidence that any Service Provider ever received or read such content. Trujillo-Jamison Decl. Ex. A at 1 (admitting that "we do not yet have evidence that conversations are read by the trackers" (*i.e.*, Service Providers), and instead describing a "potential risk" that sharing URLs "potentially allows the trackers to access user conversations."). Where, as here, a conclusory allegation is "contradicted by documents referred to in the complaint," the document controls, and the court is "not required to accept [the allegation] as true." *Steckman*, 143 F.3d at 1295–96; *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (same conclusion).

The Report claims Service Providers received only generic *record* information—URLs, page titles, metadata, and cookies—*not* the "contents or meaning of a communication." *Supra*

§ IV.C; *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message"). The only transmission of data the Report describes as "[a]lways" occurring is the transmission to Google of record information. Compl. ¶¶ 73–78. That cannot support a claim. *Zynga*, 750 F.3d at 1106; *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *17 (N.D. Cal. Oct. 16, 2025) (dismissing CIPA claim because "[p]laintiffs have not sufficiently alleged that the 'contents' of Plaintiff['s] communications, as opposed to mere record information, were read or learned" by any third party). Plaintiff does not allege that the "contents or meaning" of any communication was ever shared with Google (Compl. ¶ 75), and his attempt to equate "Conversation *URL*" with conversation *content* (*id.*) is belied by the Report itself. *See* Trujillo-Jamison Decl. Ex. A at 1. Every alleged transmission to Meta is conditional: the Report claims a Meta "[c]onnection only occurs after accepting non-essential cookies." *Id.* ¶ 80. Yet Plaintiff does not allege he ever accepted non-essential cookies. *See id.* ¶¶ 7–10. He therefore does not allege that Meta ever received the alleged information. And the Report's sole reference to "verbatim message content," which TikTok allegedly receives through so-called "alt text," likewise "[o]nly occurs after accepting non-essential cookies." *Id.* ¶ 85. Again, Plaintiff never alleges he accepted non-essential cookies.[9] *Id.*

Indeed, the Complaint's centerpiece allegation is itself framed as a mere possibility. According to Plaintiff, because each conversation "is assigned a unique URL," then "any party that Grok shares the URL with is able to obtain a full transcript of the conversation." Compl. ¶ 21. But the Complaint is devoid of any well-pled facts suggesting xAI ever shared **his** conversation URLs, or that the Service Providers **actually received or read** the content of his

---

[9] Plaintiff's own allegations confirm the distinction: the Report describes transmitted conversation URLs—which "[o]nly occurs after accepting non-essential cookies"—as following "a predictable pattern (grok.com/share/<id>)," and treats "the conversation URL and topic" as different from "actual message text." Compl. ¶ 85.

conversations. As in *Rand*, Plaintiff's allegations defeat his core theory, because the Complaint's "figures showing the metadata and identifying specifically what information [was] sent" "belie[d] any conclusory statements that the [medical] information [was] included." 2025 WL 1519726, at *4. Indeed, this Court recently dismissed similar Wiretap Act, CIPA, and common law claims because the complaint "fail[ed] to plausibly allege under Rule 8 that Defendants accessed, and therefore intercepted, users' communications." *Dawson v. Meta Platforms, Inc.*, 2026 WL 2137134, at *6–7 (N.D. Cal. July 23, 2026) (dismissing claims where the "complaint contains no details about the factual basis for its allegations that Defendants' employees can access users' messages" and "[i]t is insufficient for purposes of Rule 8 to merely state the conclusion that Defendants' employees can access users' messages.")

Unable to plead facts necessary to support an actual acquisition of any communication, Plaintiff concludes that the Service Providers generally receive user "information" in "real time." *See, e.g.*, Compl. ¶¶ 73, 79, 84. However, Plaintiff "must—but fails to—connect the [tools'] functionality in the abstract to **him individually**." *Stevens v. TD Bank, N.A.*, 2025 WL 1779164, at *5 (D.N.J. June 27, 2025) ("[A]llegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what the technology actually collected.") (emphasis added); *Doe v. Amgen, Inc.*, 2024 WL 575248, at *2 (C.D. Cal. Jan. 29, 2024) (dismissing pixel-related privacy claims because "[p]laintiff fails to explain with salient facts how Defendant transmitted her data to Advertising Tracking Companies"). Because no acquisition of contents is pled, every claim fails. *Supra* §§ IV.A–B.

### D. The LeakyLM Report's Admitted Lack of Evidence That Any Tracker Read Conversations Defeats Plaintiff's CIPA and Constitutional Claims

The Report independently forecloses Plaintiff's allegation that the Service Providers ever read anything. The Report freely admits that "we do not yet have evidence that conversations are read by trackers," warning only that pixel trackers have the "**capability** to collect" user conversations and that access to URLs "**potentially allows** the trackers to access user conversations and their content." Trujillo-Jamison Decl. Ex. A at 1 (emphases added). The Report's concession is therefore an admission that Plaintiff has no facts to suggest any Service

Provider ever received, accessed, or read such contents. And the mere "capability to read" communications is insufficient to plausibly allege that any third party did so. *See Hikma Pharms.*, 146 S. Ct. at 1399 (the "plausibility standard 'asks for more than a sheer possibility that a defendant has acted unlawfully'"); *Doe I*, 741 F. Supp. 3d at 844 (rejecting allegations that made it "not clear whether Google is, in fact, reading and learning the contents of the plaintiffs' private health information"); *cf. Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (affirming dismissal of CIPA claim where, "[a]t best, th[e] evidence shows that Salesforce *could* read messages sent through the . . . chat feature" but CIPA "requires that Salesforce read or attempted to read *her* chat message."). This failure independently defeats each of Plaintiff's California claims: § 631(a)'s operative clause reaches only one who "reads, or attempts to read, or to learn" the contents of a communication; § 632(a) requires a person actually "eavesdrop[]"; and the constitutional and intrusion claims require an actual, accomplished intrusion into private matters—not a mere capability. *Supra* § IV.A–B; *infra* § IV.E.

Finally, even if a Service Provider could use a conversation URL to access a stored conversation transcript, that after-the-fact retrieval would not be an unlawful interception under any statute. Acquisition must be contemporaneous with transmission: (i) the Wiretap Act does not reach communications acquired from "electronic storage"; (ii) CIPA § 631(a) reaches only a reading that occurs "while the [communication] is in transit"; and (iii) CIPA § 632 requires "simultaneous dissemination" rather than "secondhand repetition." *Konop*, 302 F.3d at 878 (Wiretap Act); Cal. Penal Code § 631(a); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775–76 (2002); Cal. Penal Code § 632(a). The Report's "potential risk" finding is thus fatal to Plaintiff's claims on two levels—Plaintiff pleads no facts that it ever materialized as to him (or anyone), and even if it had, it would not have violated these statutes.

Because acquisition of the contents of Plaintiff's communications—and, for the CIPA claims, an actual or attempted reading of them—is a necessary predicate for every theory of liability, Plaintiff's failure to plausibly allege either requires complete dismissal.

**E. Plaintiff's Wiretap Act and CIPA Claims Fail Under the Party Exception**

Both the Wiretap Act and CIPA exempt from liability an entity that was "party" to the allegedly intercepted communication because a party cannot "eavesdrop" on its own conversation. *See* 18 U.S.C. § 2511(2)(d); *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) ("section 631 . . . has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation."); *Brown v. Learfield Commc'ns, LLC*, 2024 WL 3676709, at *4–5 (W.D. Tex. June 27, 2024) ("it is impossible for [a] Wide Receiver . . . to intercept a ball thrown by his own quarterback"); *Rand*, 2025 WL 1519726, at *5. Because Plaintiff voluntarily directed every communication alleged in the Complaint to xAI through Grok.com (Compl. ¶ 7), xAI was at all times a party to (and the intended recipient of) those communications, and therefore cannot be liable under the Wiretap Act or the CIPA.

The Wiretap Act's disclosure and use provisions reach only information "obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." 18 U.S.C. § 2511(1)(c)–(d). Where an underlying acquisition was lawful, "[a]ny subsequent use of [a] recorded conversation" is not governed "by the prohibition on interception." *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009). *Rand* is instructive. There, even though the defendant-website transmitted user data to third-party Meta, plaintiff could not state a claim "[b]ecause the [Wiretap Act] is a one-party consent statute and [the defendant-website operator] consented to the tracking on its site." *Rand*, 2025 WL 1519726, at *5.

CIPA is no different: A party does not eavesdrop on its own conversation by using a third-party software tool to analyze that conversation. *Williams v. What If Holdings*, 2022 WL 17869275, at *3–4 (N.D. Cal. Dec. 22, 2022) (third-party software "functioned as a recorder, and not as an eavesdropper," where recordings served defendant's own purposes and "there are no facts here to suggest [third-party] 'intercepted and used the data itself.'"). By Plaintiff's own allegation, xAI deployed the Service Providers' tools for xAI's own "marketing, advertising, and analytics purposes." Compl. ¶ 36.

Nor can Plaintiff evade the party exception by recasting xAI as an aider and abettor or co-conspirator. Compl. ¶¶ 10, 111, 125–30. Such liability presupposes a primary violation by

the party allegedly aided. As set forth above, Plaintiff pleads none: he does not plausibly allege that Google, Meta, or TikTok ever received—much less read—the contents of his (or anyone's) Grok communications. *Supra* § IV.A. That failure alone disposes of Plaintiff's derivative theories against xAI under every statute he invokes. Under Section 631(a)'s fourth clause—the only CIPA provision that could conceivably reach an alleged aider and abettor—any liability attaches to one who "aids, agrees with, employs, or conspires with" another party that violates any of the prior three clauses. *Williams*, 2022 WL 17869275, at *2. Such liability is strictly derivative: a fourth-clause plaintiff must plead "an underlying predicate violation" by the third party, and where she does not, the claim fails. *Id.* at *4. Because Plaintiff pleads no predicate violation by any Service Provider there is no primary violation for xAI to have aided or conspired with.[10]

Plaintiff's derivative theories fail for a second, independent reason. As to the Wiretap Act and CIPA § 632, the statutes impose no secondary liability at all. *See In re Carrier IQ*, 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015) ("there is simply no secondary liability (such as aiding and abetting)" under the Wiretap Act). CIPA § 632 likewise contains no aiding and abetting or conspiracy provision, so xAI cannot be held liable under that section for the Service Providers' alleged receipt of data as a matter of law.

Finally, the "crime-tort exception" cannot save Plaintiff's Wiretap Act claim. Compl. ¶¶ 116–17. That exception applies only where a party intercepts a communication "for the purpose of committing any criminal or tortious act," *i.e.*, "for the purpose of facilitating some further impropriety, such as blackmail." 18 U.S.C. § 2511(2)(d); *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999). Plaintiff's invocation of the exception fails twice over.

---

[10] Nor can Plaintiff fall back on § 2511(1)(a)'s "endeavored to intercept" language. Compl. ¶ 11. Plaintiff pleads no direct act by any Service Provider aimed at understanding the substance of his communications, and § 2520(a) authorizes a civil action *only* where a communication "is intercepted, disclosed, or intentionally used." *Bailey v. Bailey*, 2008 WL 324156, at *7 (E.D. Mich. Feb. 6, 2008).

*First*, Plaintiff pleads no predicate "criminal or tortious act." His proffered predicates—violations of CIPA and invasion of privacy (Compl. ¶ 116)—fail for the reasons set forth throughout this Motion. And the alleged interception cannot serve as its own predicate, because the exception requires a purpose "separate and independent from the act of the recording." *Weston v. Lefiti*, 2024 WL 4579237, at *2 (9th Cir. Oct. 25, 2024) (citation omitted); *Learfield*, 2024 WL 3676709, at *4–5 (rejecting crime-tort exception where "[p]laintiff's claim is not tethered to another independent tortious or criminal act"). *Second*, Plaintiff's own allegations claim the Service Providers' tools serve "marketing, advertising, and analytics purposes," Compl. ¶ 36, and both California and Texas courts routinely dismiss Pixel-based wiretap claims on precisely this ground. *See Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (rejecting crime-tort exception where alleged purpose of interception was "not to perpetuate torts on millions of Internet users, but to make money"); *Sweat v. Houston Methodist Hosp.*, 2025 WL 2697111, at *7 (S.D. Tex. Sept. 22, 2025) (defendant's "only purpose was to improve its marketing and outreach").[11]

### F. Plaintiff's Consent to xAI's Terms of Service Is Fatal to All of His Claims

"He who consents to an act is not wronged by it." Cal. Civ. Code § 3515. Even if Plaintiff could sufficiently allege that xAI collected and shared his conversations with the Service Providers (he cannot), his claims would still fail because he repeatedly consented to that conduct, which xAI's Terms of Service authorize. *See supra* §§ II.A–B; *Sisti v. Bosley Inc.*, 2026 WL 1223927, at *6 (C.D. Cal. Apr. 27, 2026) (dismissing Wiretap Act, CIPA, and

---

[11] The authorities Plaintiff cites (Compl. ¶ 117), are not to the contrary: *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1066–67 (N.D. Cal. 2021), involved Google's alleged interception of communications expressly promised *not* to collect from users browsing in "Incognito" mode—the opposite of the contractually authorized data practices here. And *Marden* and *R.C.* both involved alleged criminal disclosures of protected health information in violation of HIPAA, a theory neither alleged nor available here. 2024 WL 4448684, at *2 (N.D. Cal. July 3, 2024); 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024).

common-law claims where plaintiff "manifested his assent to the same data disclosures that he challenges"). The Wiretap Act imposes no liability where just "one of the parties to the communication has given prior consent." 18 U.S.C. § 2511(2)(d). CIPA likewise imposes liability *only* where the conduct occurs "without the consent of *all* parties." Cal. Penal Code §§ 631(a), 632(a). And California constitutional and common-law privacy claims fail where, as here, the plaintiff "manifested by his or her conduct a voluntary consent to the invasive actions of [the] defendant." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994).[12]

Plaintiff's consent is demonstrated by his own allegations and his agreement to xAI's Terms. *Supra* §§ II.A–B; Murphy Decl. ¶¶ 15–16. Plaintiff alleges continuous use of Grok.com—an account-based service whose login page his own sources describe (Compl. ¶ 86)—"[t]hroughout 2025 and 2026." *Id.* ¶ 7. Every version of the Terms governing Plaintiff's use provides that use of the Service constitutes acceptance of the Terms, and continued use constitutes acceptance of any revised Terms. *Supra* § II.A–B. Plaintiff's allegation that the conduct occurred "without [his] knowledge, consent, or express written authorization" (Compl. ¶ 10) is a legal conclusion not entitled to be credited on a motion to dismiss, and in any event is contradicted by the Terms he agreed to by signing up for and using the Service. *See Iqbal*, 556 U.S. at 678; *Steckman*, 143 F.3d at 1295–96.[13]

The Terms unambiguously authorize each category of conduct alleged in the Complaint. Plaintiff alleges that Grok.com automatically transmitted his conversation URLs, page titles, metadata, and cookies to analytics service providers. Compl. ¶¶ 75–76, 80, 85–86. That is "Usage Data" as the Terms define it—"diagnostic, technical, usage, and/or related information" that xAI may collect to "monitor your usage of [Grok.com]"—and Plaintiff assigned that Usage

---

[12] "Consideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim." *Silver v. Stripe*, 2021 WL 3191752, at *2 (N.D. Cal. July 28, 2021).

[13] The sign-up and messaging screens shown to all users, including Plaintiff—"[b]y continuing, you agree to xAI's Terms of Service" and "[b]y messaging Grok, you agree to our Terms" (Murphy Decl. ¶¶ 15–16)—support the same conclusion.

Data to xAI "to share analytics and other derived Usage Data with third-parties." *Supra* § II.A.2. Thus, the sharing of such analytics data with the Service Providers was both permitted by, and described in, the Terms. And even if Plaintiff could plausibly allege his conversation transcripts were disclosed (he cannot), such transcripts are "User Content"—the "text" a user enters into Grok and receives in response—which Plaintiff licensed xAI to "use, copy, store, modify, distribute, reproduce, [and] publish . . . for any purpose." *Supra* § II.A.1.

Plaintiff's consent is fatal to all claims. The Wiretap Act claim fails under § 2511(2)(d)'s one-party-consent exception. In *Smith v. Facebook*, this Court dismissed—and the Ninth Circuit affirmed—Wiretap Act, CIPA, and constitutional privacy claims where Facebook's policies "disclos[ed] the precise conduct at issue," such that "the practice complained of falls within the scope of Plaintiffs' consent." 262 F. Supp. 3d 943, 954–56 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8, 9 (9th Cir. 2018). The CIPA claims also fail because Sections 631 and 632 "impose[] liability only for interception 'without the consent of all parties,'" *id.* at 955, and courts dismiss both where, as here, the defendant's "policies cover the alleged conduct." *See, e.g.*, *Timothee v. Meta Platforms, Inc.*, 2026 WL 1130363, at *7–8 (N.D. Cal. Apr. 27, 2026) (dismissing both claims). Consent also defeats the "objectively reasonable expectation" of privacy on which Plaintiff's CIPA § 632 claim independently depends. *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019–20 (9th Cir. 2013). And the constitutional and intrusion claims fail because "[i]f voluntary consent is present, a defendant's conduct will rarely be deemed 'highly offensive to a reasonable person.'" *Hill*, 7 Cal. 4th at 26; *Lakes*, 777 F. Supp. 3d at 1058 ("[p]laintiffs' consent is a defense to all three claims"—CIPA, intrusion, and constitutional); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037–38 (N.D. Cal. 2014) ("*Yahoo*") ("he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions.").

### G. Plaintiff's Agreement to xAI's Choice-of-Law Provision Independently Precludes His CIPA and Constitutional Claims

In repeatedly agreeing to xAI's Terms, Plaintiff also agreed that "the laws of the State of Texas, excluding its choice of law provisions, will govern these Terms and any dispute that

arises between you and us," and that xAI's "choice of [Texas] law and forum selection provisions . . . shall apply regardless of whether a dispute or any claims contained therein are based in contract, tort, statute, common law, or otherwise." Murphy Decl. ¶ 14 & Exs. B & C at 4; *id.* ¶ 13 & Ex. A at 4 (materially identical provision). The Terms are explicit that these provisions "shall apply to pending and future disputes and shall apply to your dispute regardless of when the conduct relating to the dispute arose or occurred." *Id.* ¶ 14 & Exs. B & C at 4; *id.* ¶ 13 & Ex. A at 4 (materially identical provision). And every version of the Terms in effect since Plaintiff created his account selected Texas law. *Id.* ¶¶ 13–14 & Exs. A, B & C at 4.

That provision requires dismissal of Plaintiff's California-law claims. "In determining what state law to apply, a federal court applies the choice-of-law rules of the state in which it sits." *Unified W. Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1111 (9th Cir. 2006). Under California law, a "valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized." *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 470 (1992); *see also Ind. Lumbermens Mut. Ins. Co. v. W. Or. Wood Prods., Inc.*, 268 F.3d 639, 644 n.3 (9th Cir. 2001) (applying the law of the state identified in the parties' contractual choice-of-law provision). Moreover, Texas law supplies Plaintiff with an adequate remedy because it similarly prohibits unconsented-to interceptions of communications and provides prevailing plaintiffs civil damages. *See* Tex. Civ. Prac. & Rem. Code §§ 123.001–.004. Nor is there any basis to decline enforcement. Texas bears a "substantial relationship" to the parties—it is xAI's home state and principal place of business—and enforcing the parties' choice offends no "fundamental policy" of California. *See* Declaration of Nicole Hollander ¶¶ 5-6; *Nedlloyd*, 3 Cal. 4th at 464–66; Tex. Civ. Prac. & Rem. Code §§ 123.001–.004. Plaintiff's CIPA claims and his California constitutional claims fail as a matter of law and should be dismissed.

**H. Each of Plaintiff's Claims Independently Fails to State a Claim**

Even setting aside the fatal defects set forth above, each of Plaintiff's claims independently fails on the merits, and each failure is an independent ground for dismissal.

1. Plaintiff's Wiretap Act and CIPA Claims Fail for Lack of a Contemporaneous Acquisition

Plaintiff's Wiretap Act and CIPA claims independently fail because Plaintiff pleads no facts showing a contemporaneous acquisition of any communication. A communication is "intercepted" under the Wiretap Act only if it is "acquired during transmission, not while it is in electronic storage." *Konop*, 302 F.3d at 878. CIPA § 631(a) likewise reaches only a "reading" that occurs "while the same is in transit." *See Mastel v. Miniclip S.A.*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) ("the crucial question . . . is whether [the defendant] read one of [the plaintiff's] communications while it was still in transit"); *J.S. v. Spring Fertility Holdings*, 2026 WL 1483490, at *5 (N.D. Cal. May 27, 2026) (plaintiff must plead "specific facts about 'when the interception occurs'"). And CIPA § 632 requires "simultaneous dissemination," not "secondhand repetition." *Flanagan*, 27 Cal. 4th at 775.

The Complaint's only allegation on contemporaneity is a single conclusory sentence—copied verbatim for each Service Provider—that embedded code "secretly and contemporaneously duplicate[s] the communication." Compl. ¶¶ 77, 82, 88. But copy-pasted legal conclusions are exactly the sort of "[t]hreadbare recitals," "supported by mere conclusory statements," that plainly "do not suffice." *Iqbal*, 556 U.S. at 678. As this Court has held, "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [the defendant] is intercepting their data in transit." *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022). Indeed, the only acquisition of contents that is even *mentioned* in the Report describes retrieval of a conversation transcript from storage, not acquisition of communications "during their transmission." By the Report's own description, conversation URLs are "publicly available permalinks," and it is only "by extension" of that "permalink" that any future "capability to read" conversations "exist[s]" at all. Trujillo-Jamison Decl. Ex. A at 1. In other words, the only way a Service Provider could conceivably obtain the contents of a conversation would be to request the stored page *after* the communication is complete—which is not an "interception" under the Wiretap Act, not a

reading "while . . . in transit" under CIPA § 631, and not "simultaneous" eavesdropping under CIPA § 632.

Because Plaintiff pleads no non-conclusory facts showing that any Service Provider acquired any communication during its transmission, Counts I–III should be dismissed.

2. Plaintiff Fails to State a Claim Under Any Clause of CIPA § 631

Section 631(a) proscribes "three distinct and mutually independent patterns of conduct": "intentional wiretapping," "willfully attempting to learn the contents or meaning of a communication in transit," and "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti*, 22 Cal. 3d at 192. A fourth clause imposes derivative liability on one who "aids, agrees with, employs, or conspires with" a person who violates any of the first three. Cal. Penal Code § 631(a). Plaintiff makes no attempt to tie his factual allegations to any particular clause of CIPA § 631; instead, he recites the entire section of a four-part statute wholesale—thus engaging in impermissible shotgun pleading that independently warrants dismissal. Compl. ¶¶ 124–30; see *Gibson v. Portland,* 165 F.4th 1265, 1288, 1290 (9th Cir. 2026) (a complaint must "separate into a different count each . . . claim for relief" and "pleadings that do not tie factual averments against specific parties to individual causes of action infringe[] Rule 8"). Regardless, Plaintiff's claim under CIPA § 631(a) fails under all four clauses.

First clause. Section 631(a)'s wiretapping clause "concerns telephonic wiretapping specifically, which does not apply to the context of the internet." *Williams*, 2022 WL 17869275, at *2; *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020) (Freeman, J.). Every communication alleged in the Complaint is an internet communication Plaintiff voluntarily typed into Grok.com. Compl. ¶¶ 1, 7. Accordingly, CIPA § 631(a)'s first clause does not apply here.

Second clause. The second clause reaches only one who "willfully and without the consent of all parties to the communication" "reads, or attempts to read, or to learn the contents or meaning" of a communication "while the same is in transit." Cal. Penal Code § 631(a). Every element of the second clause fails for reasons already established above. No Service Provider is

alleged to have read—or attempted to read—any "contents or meaning": Plaintiff's own source admits it found no evidence of reading, only a dormant "capability," and what a third party "could do is not the relevant inquiry." *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *6 (N.D. Cal. Apr. 17, 2025); *James v. Allstate Ins. Co.*, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023) ("Plaintiff's allegation that . . . 'data is stored or can be accessed by [defendant]' is insufficient to support a plausible inference [defendant] attempted to read or learn the contents of the communication"). Moreover, Plaintiff does not allege that anything was read "while . . . in transit." As the intended recipient of any communications, xAI could not eavesdrop on its own conversation. And Plaintiff consented to the complained-of practices in any event.

Third clause. The third clause penalizes only the use of "information so obtained." Because Plaintiff pleads no predicate violation of CIPA as set forth *supra*, his third-clause theory fails with it. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 827 (a plaintiff "must establish that the information at issue . . . was obtained through a violation of the first or second clauses," and where he has not, he has "failed to plead a violation of the third clause").

Fourth clause. The fourth clause imposes only derivative liability. It requires a primary Section 631(a) violation by a third-party eavesdropper, and none is pled here. *Supra* §§ IV.A–B; *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024) (where plaintiff "fails to establish an underlying third-party violation, she cannot allege aiding and abetting liability"). And Plaintiff's conclusory refrain that each Service Provider "processes" record data and "adds it to datasets to target advertisements" (¶¶ 78, 83, 89) cannot save his claim. Copy-pasted conclusions are not well-pled facts, and even if credited, a third party's downstream use of lawfully transmitted record data is not an interception of contents in transit.

#### 3. Plaintiff's CIPA § 632 Claim Independently Fails for Lack of a Confidential Communication

Plaintiff does not allege a "confidential" communication required for his CIPA § 632 claim because he did not have a reasonable expectation that his communications with Grok would not be "overheard or recorded." *See* Cal. Penal Code § 632(a), (c). CIPA § 632 prohibits "unconsented-to eavesdropping or recording of conversations," *Flanagan*, 27 Cal. 4th at 775,

and applies only to objectively "confidential" communications, where a party has "an objectively reasonable expectation that the conversation is not being overheard or recorded." *Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021).

Here, Plaintiff does not—and cannot—allege an "objectively reasonable expectation" that his Grok chats were not being recorded. "[I]nternet-based communications are not 'confidential' within the meaning of CIPA § 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) (collecting cases in accord); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848–49 (N.D. Cal. 2014) (Facebook messages not "confidential" for purposes of CIPA § 632 claim). That is especially true here. As the Complaint itself alleges, a Grok user submits written queries, "receive[s] conversational responses in writing," and each exchange is memorialized in a transcript that is "assigned a unique URL." Compl. ¶¶ 19–21. Moreover, Plaintiff granted xAI an irrevocable, perpetual right to "store," "copy," "publish," and "distribute" those communications "for any purpose." *Supra* §§ II.A.1. A user who grants the recipient of his communications a license to store, copy and distribute those communications "for any purpose" cannot plausibly allege an expectation that they were not being recorded.[14]

---

[14] Texas law is in accord and indeed forecloses this claim outright. Both its criminal interception statute and its civil counterpart prohibit only interceptions made without the consent of a party to the communication. *See* Tex. Penal Code § 16.02(c)(4) (no offense where the actor "is a party to the communication" or where "one of the parties to the communication has given prior consent"); Tex. Civ. Prac. & Rem. Code § 123.001(2) (defining an actionable "interception" as an acquisition made "without the consent of a party to the communication"). Because Plaintiff voluntarily directed every prompt to xAI, his CIPA § 632 theory would not state a claim under the Texas law the parties selected.

4. Plaintiff's California Constitution Claims Fail

Finally, Plaintiff's claims under the California constitution—for invasion of privacy and intrusion upon seclusion—separately fail because his allegations fall short of the "high bar" required for these claims under California law. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). "To state a claim of invasion of privacy under the California Constitution, the plaintiff must show (1) she possesses a legally protected privacy interest, (2) she maintains a reasonable expectation of privacy, and (3) the defendant's conduct amounts to a serious invasion of privacy." *Williams v. DDR Media, LLC*, 2023 WL 5352896, at *5 (N.D. Cal. Aug. 18, 2023). Similarly, an intrusion claim requires conduct "highly offensive to a reasonable person," which is a "high bar." *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024) (dismissing intrusion claim where disclosure of user searches did not rise to the level of an "egregious breach of the social norms" that is "highly offensive").

Plaintiff fails to plausibly allege either a "serious invasion of privacy" or a "highly offensive" intrusion. The Complaint alleges only generic categories of topics Plaintiff says he discussed with Grok—"finances, investment strategy, private health conditions, business projects, and other private information" (Compl. ¶ 7)—but never identifies a single prompt or sensitive fact that was ever transmitted to xAI (much less transmitted to, or ever accessed or viewed by, any Service Provider). *See id.* And as discussed *supra* (§ IV.C), the primary source on which Plaintiff relies describes the alleged transmission of *record* information, rather than the *substance* of any conversation. *Id.* ¶¶ 75, 80, 86. That pleading defect is fatal because "without any specific allegations as to what of plaintiff's personal information was collected by defendant, the Court cannot identify any harm to her privacy, much less identify a 'highly offensive' intrusion." *Cheung v. Slickdeals, LLC*, 2026 WL 1872831, at *9 (C.D. Cal. June 29, 2026); *Yahoo*, 7 F. Supp. 3d at 1041 (rejecting "conclusory allegation" that "intercepted information [w]as 'Sensitive Information'").

Moreover, "there is no reasonable expectation of privacy when the data collection is within the users' common-sense expectation or when the information is not sensitive." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022). Courts have

repeatedly found that "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024).

Finally, "data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling*, 615 F. Supp. 3d at 1090 (collecting cases dismissing analogous California constitutional claims). This is particularly true where, as here, Plaintiff authorized and consented to the alleged data collection practices. *Supra* § IV.F. Count IV should be dismissed.

**I. Leave to Amend Should Be Denied**

Although Federal Rule of Civil Procedure 15 provides that leave to amend should be freely given, that rule "does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal." *Steckman*, 143 F.3d at 1298. That is the case here. *First*, Plaintiff's claims rest entirely on a Report that disclaims the very facts Plaintiff must plead: that a Service Provider acquired and/or read the contents of any conversation. Plaintiff cannot escape this dispositive admission. *Steckman*, 143 F.3d at 1296–98 ("dismissal with prejudice was properly entered" where incorporated documents contradicted plaintiff's key allegations). *Second*, no amendment can rewrite the Terms Plaintiff accepted, which bar his claims, nor undo the consent and the choice of Texas law they establish. *Third*, the defects in each claim are legal, not curable by amendment. Because "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," dismissal with prejudice is proper. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## V. <u>CONCLUSION</u>

For the foregoing reasons, xAI respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,

Dated: August 10, 2026

WILLENKEN LLP

By: <u>*/s/ Kenneth M. Trujillo-Jamison*</u>

Kenneth M. Trujillo-Jamison
Attorneys for Defendant X.AI LLC