**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (State Bar No. 363482)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: jwilner@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AUSTIN SKAGGS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>X.AI, LLC,<br><br>Defendant. | Case No. 5:26-cv-04550-BLF<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: January 21, 2027<br>Time: 9:00 a.m.<br>Ctrm: 1<br>Judge: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS


PAGE

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 2

I. DEFENDANT'S TERMS OF SERVICE DO NOT BAR PLAINTIFFS' CLAIMS ............ 2

A. Defendant Fails To Include Evidence Of The Presentation Of The Terms Of Service Hyperlink ........................................................................ 2

B. The Court Has Already Determined Plaintiff Did Not Consent To The Terms Of Service ........................................................................................ 3

C. The Terms Of Service Do Not Disclose The Wiretapping ..................................... 4

D. The Choice Of Law Clause Is Unenforceable As To Plaintiff's California Claims .......................................................................................... 6

II. PLAINTIFF PLAUSIBLY ALLEGES HIS CIPA AND ECPA CLAIMS ........................... 8

A. The Third Parties Intercepted The Contents Of Plaintiff's Chats ............................. 8

B. The Third Parties Contemporaneously Intercepted, Read, Attempted To Read, Or Learned The Contents Of Plaintiff's Chats ........................................ 11

C. Plaintiff's Chats With Grok Were "Confidential" Under CIPA § 632 ................... 15

D. The Party Exception Does Not Bar Plaintiff's Wiretapping Claims ....................... 17

III. PLAINTIFF PLAUSIBLY ALLEGES HIS CALIFORNIA CONSTITUTION CLAIM ............................................................................................................ 20

IV. IF THE COURT GRANTS THE MOTION (WHICH IT SHOULD NOT), PLAINTIFF SHOULD BE GIVEN LEAVE TO AMEND ............................................... 21

CONCLUSION ......................................................................................................... 21

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ambriz v. Google, LLC*,
2025 WL 830450 (N.D. Cal. Feb. 10, 2025) ..... 12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 14

*Benson v. Double Down Interactive, LLC*,
798 F. App'x 117 (9th Cir. 2020) ..... 4

*Boseovski v. McCloud Healthcare Clinic, Inc.*,
2020 WL 68578 (E.D. Cal. Jan. 7, 2020) ..... 18

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
622 F.3d 996 (9th Cir. 2010) ..... 8

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ..... 18

*Byars v. Goodyear Tire and Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ..... 11, 20

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ..... 5

*Campbell v. Select Med. Corp.*,
2026 WL 2056651 (C.D. Cal. July 14, 2026) ..... 9

*Carr v. United States*,
560 U.S. 438 (2010) ..... 5

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ..... 8, 13

*Dawson v. Meta Platforms, Inc.*,
2026 WL 2137134 (N.D. Cal. July 23, 2026) ..... 14

*Dawson v. Univ. of Phoenix, Inc.*,
2026 WL 92248 (N.D. Ill. Jan. 13, 2026) ..... 18

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ..... 14, 15

*Doe I v. Google LLC*,
2025 WL 1616720 (N.D. Cal. June 6, 2025) ..... 11

*Doe v. Adventist Health System/West*,
2026 WL 2474859 (2d Dist. Ct. App. July 24, 2026) .......... 11

*Doe v. Amgen, Inc.*,
2024 WL 575248 (C.D. Cal. Jan. 29, 2024) .......... 15

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 12

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 12

*Elvin v. Am. Home Mortg. Inv. Tr. 2005-2*,
2009 WL 839930 (E.D. Cal. Mar. 30, 2009) .......... 5

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .......... 8

*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) .......... 18

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) .......... 16

*Gray v. Luxottica of Am., Inc.*,
2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) .......... 17

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) .......... 14

*In re Facebook Biometric Information Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) .......... 6

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 20

*In re Google RTB Consumer Privacy Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 9

*In re Otter.AI Privacy Litig.*,
2026 WL 2351237 (N.D. Cal. Aug. 13, 2026) .......... 16

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 10

*J.S. v. Spring Fertility Holdings, LLC*,
2026 WL 1483490 (N.D. Cal. May 27, 2026) .......... 20

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 2, 4

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 17

*Jones v. Skullcandy, Inc.*,
2026 WL 699819 (S.D. Cal. Mar. 12, 2026) ........ 13, 16, 17

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........ 11, 13

*Kotrla v. Kotrla*,
718 S.W.2d 853 (Tex. Ct. App. 1986) ........ 6

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) ........ 9, 10, 18

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025) ........ 20

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ........ 21

*Lynch v. Express Scripts Holding Co.*,
2026 WL 1749550 (N.D. Cal. June 17, 2026) ........ 13

*Musacchio v. United States*,
577 U.S. 237 (2016) ........ 3

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ........ 12

*Potters v. Walmart, Inc.*,
2024 WL 7095393 (C.D. Cal. Aug. 28, 2024) ........ 2

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) ........ 4

*Ramirez v. Trusper, Inc.*,
2026 WL 2351235 (N.D. Cal. Aug. 13, 2026) ........ 13

*Rand v. Eyemart Express, LLC*,
2025 WL 1519726 (N.D. Tex. May 27, 2025) ........ 14

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........ 6, 7

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017) ........ 21

*Ruiz v. Affinity Logistics Corp.*,
667 F.3d 1318 (9th Cir. 2012) ........ 7

*Rusow v. Skinspirit Essential LLC*,
2025 WL 4657637 (N.D. Cal. Oct. 15, 2025) ........ 17

*SBCW Consulting Inc. v. TSYS Merchant Solutions, LLC*,
2024 WL 4867246 (C.D. Cal. Oct. 28, 2024) ........ 3

*Selby v. Sovrn Holdings, Inc.*,
2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) ........ 8

*Semien v. PubMatic Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) ........ 11

*Skaggs v. x.AI, LLC*,
2026 WL 2352969 (N.D. Cal. Aug. 13, 2026) ........ 3

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ........ 13

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) ........ 7, 15, 18

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ........ 10, 19

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ........ 16

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ........ 13, 14

*Stevens v. TD Bank, N.A.*,
2025 WL 1779164 (D.N.J. June 27, 2025) ........ 15

*Stover v. Experian Holdings, Inc.*,
978 F.3d 1082 (9th Cir. 2020) ........ 4

*Taylor v. ConverseNow Techs., Inc.*,
2025 WL 2308483 (N.D. Cal. Aug. 11, 2025) ........ 17

*Turner v. Nuance Communications, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) ........ 18

*United States v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011) ........ 21

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) ........ 13

*Vera v. O'Keefe*,
791 F. Supp.2d 959 (S.D. Cal. 2011) ........ 19

*Washington Mutual Bank, FA v. Superior Ct.*,
24 Cal. 4th 906 (2001) ........ 6

*Wilson v. Huuuge, Inc.*,
944 F.3d 1212 (9th Cir. 2019) ........ 4

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ........ 5, 12, 16

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ........ 9

**STATUTES**

18 U.S.C. § 2510 ........ 9, 10, 12, 18

18 U.S.C. § 2511 ........ 6, 17, 18

Cal. Pen. Code § 31 ........ 19

Cal. Pen. Code § 631(a) ........ 6, 9

Cal. Pen. Code. § 632 ........ 6, 19

Tex. Civ. Prac. & Rem. Code § 123.001 ........ 6

Tex. Pen. Code § 16.02(c)(4)(B) ........ 6

**RULES**

Fed. R. Civ. P. 8(d) ........ 19

Fed. R. Civ. P. 15(a) ........ 21

Plaintiff Austin Skaggs ("Plaintiff") respectfully submits this Opposition to Defendant x.AI, LLC's ("Defendant") Motion to Dismiss (ECF No. 30) (the "Motion" or "MTD").

**INTRODUCTION**

"Generative AI is rapidly becoming a foundational layer of the Internet" (Trujillo Decl. Ex. A), with consumers corresponding with AI agents like Defendant's Grok AI "to get answers in the way people have become accustomed to searching for information on search engines." Compl. ¶ 20. This also means that consumers increasingly consult AI agents for sensitive medical and financial information. Trujillo Decl. Ex. A ("User conversations frequently contain sensitive information as users often perceive LLMs as trusted assistants. This perception increases the likelihood of oversharing sensitive information."). There is a trend of consumers using AI agents as therapists. ORIGINAL RESEARCH: CHATGPT MAY BE THE LARGEST PROVIDER OF MENTAL HEALTH SUPPORT IN THE UNITED STATES, SENTIO UNIV. (Mar. 18, 2025)[1] Some even go as far as to have "romantic relationships" with AI agents. Tracey Follows, *People Are Now Marrying AI: Inside The Rise Of Synthetic Intimacy*, FORBES (Nov. 15, 2025).[2] And Plaintiff himself chatted with Grok about "finances, investment strategy, private health conditions, business projects, and other private information." Compl. ¶ 7.

So it would likely surprise consumers—as it did Plaintiff—to learn that Defendant is enabling the likes of Meta, Google, and TikTok (the "Third Parties") to contemporaneously acquire the *entire transcript* of users' communications with Grok. Compl. ¶¶ 75, 80, 85. Every prompt, every sensitive interaction and response, disclosed instantaneously to three of the world's largest companies for use in profiling and advertising. *See*, *e.g.*, *id.* ¶¶ 23-26, 35-36, 40, 45, 50, 52-53, 57, 65-66, 75, 80, 85. And Defendant, for its part, does not first ask user's permission to disclose that information. Instead, Defendant (wrongly) assumes users agree simply by using its website, without any conspicuous notice of the same. MTD at 17:6-8 ("Every version of the Terms governing Plaintiff's use provides

---

[1] Available at https://sentio.org/ai-research/ai-survey.

[2] Available at https://www.forbes.com/sites/traceyfollows/2025/11/15/people-are-now-marrying-ai-inside-the-rise-of-synthetic-intimacy/.

that use of the Service constitutes acceptance of the Terms, and continued use constitutes acceptance of any revised Terms."); *id.* at 17:16 ("The Terms unambiguously authorize each category of conduct alleged in the Complaint.").

So, no, this not "another pixel case." MTD at 1:17. This is a company owned by the world's richest person, sharing the immense amount of information its AI agent was entrusted with—in a thorough and non-anonymous manner—with three of the world's largest companies to line its own pockets, and designing its website in a way that leaves users without notice that this practice is occurring. That is not conduct permitted under either California or federal law, and it is highly offensive at that.

For the following reasons, Defendant's Motion should be denied.

## ARGUMENT

### I. DEFENDANT'S TERMS OF SERVICE DO NOT BAR PLAINTIFFS' CLAIMS

Defendant makes two related arguments based on its Terms and Conditions and Privacy Policy. *First*, Defendant argues Plaintiff consented to the wiretapping because he "agree[d] to xAI's Terms," which ostensibly disclosed the conduct at issue. MTD at 17:3-4. Likewise, Defendant argues "Plaintiff also agreed that the laws of the State of Texas … will govern these Terms and any dispute that arises between you and us," which "requires dismissal of Plaintiff's California-law claims." MTD at 18:19-19:1. Both of these arguments fail.

#### A. Defendant Fails To Include Evidence Of The Presentation Of The Terms Of Service Hyperlink

Unlike its Motion to Transfer, Defendant does not include any information about the design and content of its webpages showing the presentation of the hyperlink to the Terms of Service. *Compare* ECF No. 21-2 (Murphy Declaration showing presentation of webpages) *with* ECF No. 30-2 (Murphy Declaration lacking same screenshots). Ninth Circuit law is clear that the party seeking to show the existence of a contract formed online must show the design and content of its webpage. *See, e.g.*, *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023) (declining to find notice of updated terms where "Amazon did not provide the court with a copy or description of any such notice"); *Potters v. Walmart, Inc.*, 2024 WL 7095393, at *6 (C.D. Cal. Aug. 28, 2024) ("Defendants failed to proffer even the most basic information about Cash App's notice of the 2016 TOS including

where Plaintiff would have accessed it."); *SBCW Consulting Inc. v. TSYS Merchant Solutions, LLC*, 2024 WL 4867246, at *3 (C.D. Cal. Oct. 28, 2024) ("Nor do they show that Plaintiff would have seen the message if it had viewed the portal, as Defendants neglect to provide information about how or where the message was displayed that would allow the Court to evaluate the visual aspects of the notice.") (cleaned up). Absent evidence of what the presentation of the Terms of Service hyperlink looked like during the relevant time period, Defendant's arguments fail.

### B. The Court Has Already Determined Plaintiff Did Not Consent To The Terms Of Service

Assuming *arguendo* that the presentation of the hyperlink was the same as in Defendant's Motion to Transfer (ECF No. 21-2 ¶¶ 26-28), Defendant's arguments still fail.

Previously, "Defendant moved to transfer this action to the Northern District of Texas based on two forum selection clauses in … Defendant's terms of service." *Skaggs v. x.AI, LLC*, 2026 WL 2352969, at *1 (N.D. Cal. Aug. 13, 2026) (Labson Freeman, J.). In doing so, the Parties disputed whether Plaintiff "was [] on notice of and thus … assent[ed] to either version of Defendant's terms of service." *Id.*, at *2. The Court rejected Defendant's position, finding, "under California law, Plaintiff lacked reasonably conspicuous notice of Defendant's forum selection clauses and therefore could not have unambiguously assented to them." *Id.*, at *9. Specifically, the Court found Defendant failed to show Plaintiff was on "reasonably conspicuous notice" of the hyperlink to the Terms of Service when Plaintiff "sign[ed] up for a Grok account" and when Plaintiff "enter[ed] queries on the Grok chat screen." *Id.*, at *7. That decision remains the law of the case. *See Musacchio v. United States*, 577 U.S. 237, 244-45 (2016).

The Court's prior holding forecloses Defendant's arguments. The choice of law clause and the language Defendant claims support its consent defense are included in the same Terms of Service the Court previously found Plaintiff was not on notice of. *See* Murphy Decl. ¶¶ 9-14. Because Defendant has not shown Plaintiff was on notice of the hyperlink to the Terms of Service, the Terms of Service cannot bind Plaintiff. *See Skaggs*, 2026 WL 2352969, at *7 ("[B]ecause the lack of reasonably conspicuous notice is dispositive, the Court concludes that Plaintiff did not agree to be bound to the 2025 forum selection clause by signing up for a Grok account."); *id.*, at *9 ("Plaintiff

lacked reasonably conspicuous notice of Defendant's forum selection clauses and therefore could not have unambiguously assented to them."). Courts do not evaluate the consent issue for a privacy claim differently than the consent issue for agreement to terms; Defendant is still arguing that Plaintiff assented to an agreement despite a lack of notice. *See*, *e.g.*, *Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1357-59 (S.D. Cal. 2024) (applying California's notice-assent framework for evaluating hyperlinks to consent defense in wiretapping case).

Contrary to Defendant's arguments (*see* MTD at 17:4), even "[r]epeated use of a website … does not contribute to constructive notice because users are no more likely to stumble upon inconspicuous hyperlinks on their hundredth or thousandth visit than they are on their first." *Benson v. Double Down Interactive, LLC*, 798 F. App'x 117, 119-20 (9th Cir. 2020); *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019) (rejecting argument that "Wilson's repeated use of the app places him on constructive notice since it was likely he would stumble upon the Terms during that time period"). Defendant's Terms contain a provision stating "[y]our continued use of the Service after any change to these Terms constitutes your acceptance of the new Terms of Service." Murphy Decl. ¶ 10. But absent evidence of notice of the updated terms—let alone notice of the hyperlink to the Terms in the first place—that provision is non-binding. *Jackson*, 65 F.4th at 1100-01 ("[A] consumer must receive a reasonable notice of the proposed modified term … It is not sufficient to provide a general notice of the possibility of future modifications.") (cleaned up); *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020) ("Stover had no obligation to investigate whether Experian issued new terms without providing notice to her that it had done so.").

### C. The Terms Of Service Do Not Disclose The Wiretapping

Notwithstanding that Defendant failed to show Plaintiff was on notice of the Terms of Service (Argument §§ I.A-B, *supra*), the Terms do not disclose the conduct at issue and, in fact, represent the opposite to users. The Terms define the contents of users' conversations with Grok as "user content." Murphy Decl. Exs. A-C at 2. Despite using the term "any purpose," the Terms specifically enumerate Defendant's uses of user content: "(i) to maintain and provide the Service; (ii) to improve our products and the Service and for our other business purposes, such as data analysis, customer and market research, developing new products or features, or identifying or displaying usage or User

Content trends; and (iii) to perform such other actions to enforce these Terms, comply with our Privacy Policy, comply with applicable law, or keep our Service safe." *Id*. None of these enumerated uses have anything to do with sharing the full text of users' conversations with other technology companies for targeted advertising. Compl. ¶¶ 24-28, 31, 35-36, 39-42, 45, 47-48, 50, 63, 83, 87, 89; *see also Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 977 (N.D. Cal. 2023) ("Personal information is not synonymous with a word-for-word transcript of all communications both as a matter of common sense and as defined by the policy.") (cleaned up). Moreover, in contract law, "[i]t is well settled that where there is an inconsistency between general provisions [*e.g.*, "any purpose"] and specific provisions [*e.g.*, the enumerated uses], the specific provisions ordinarily qualify the meaning of the general provisions." *Elvin v. Am. Home Mortg. Inv. Tr. 2005-2*, 2009 WL 839930, at *15 (E.D. Cal. Mar. 30, 2009) (cleaned up). And if a "user could have plausibly understood the disclosures as not disclosing that the defendant would engage in particular conduct, then the disclosures are insufficient to establish consent." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1148 (9th Cir. 2024) (cleaned up).

Further, the Terms later state that only "aggregated, pseudonymized, and/or de-identified data" would be collected or disclosed. *Id*. at 3. This, of course, leaves users with the impression that they cannot be identified and that their personal information will not be used for targeted advertising. However, Plaintiff alleges the precise opposite: that the full transcript of his conversations were disclosed alongside personally identifiable information, including his email address and cookies linked to his Google and Facebook profiles. Compl. ¶¶ 73-89.

Finally, the provision discusses Defendant's ability to "use, copy, store, modify, distribute, reproduce, publish, display in public forums, list information regarding, make derivative works of, and aggregate your User Content." Murphy Decl. Exs. A-C at 2. Notwithstanding this provision concerns *Defendant's* use—rather than that of the Third Parties—the verbs are conjugated in the present tense, thus contemplating after-the-fact, forward-looking conduct. *Cf. Carr v. United States*, 560 U.S. 438, 449 (2010) ("[A] statute's undeviating use of the present tense [i]s a striking indicator of its prospective orientation.") (cleaned up). In other words, this provision of the Terms may, at best, describe Defendant's *future* disclosure of information. But it does not disclose the *simultaneous*

interception of Plaintiff's communications by the Third Parties. And as the California Supreme Court has long held, "[w]hile one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985). Thus, the Terms of Service do not disclose the conduct at issue.

**D. The Choice Of Law Clause Is Unenforceable As To Plaintiff's California Claims**

Again notwithstanding that Defendant failed to show Plaintiff was on notice of the Terms of Service (Argument §§ I.A-B, *supra*), the Texas choice of law clause in the Terms is unenforceable as to Plaintiff's California claims. "A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *In re Facebook Biometric Information Privacy Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (cleaned up). "[T]he parties' choice generally will be enforced unless the other side can establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue." *Washington Mutual Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 917 (2001).

Here, both inquiries weigh in favor of applying California law. *First*, Texas's wiretapping law—Tex. Civ. Prac. & Rem. Code §§ 123.001, *et seq.*—conflicts with the CIPA. CIPA §§ 631-632 are two-party consent statutes. Cal. Pen. Code § 631(a) (prohibiting wiretapping "without the consent of all parties to the communication"); Cal. Pen. Code. § 632(a) (prohibiting the recording of a confidential communication "without the consent of all parties"). Texas law, by contrast, prohibits interception "without the consent of *a party* to the communication." Tex. Civ. Prac. & Rem. Code § 123.001(2) (emphasis added). In other words, the statute is "inapplicable" where "a party … consented to the recording," *i.e.*, Texas is a one-party recording state. *Kotrla v. Kotrla*, 718 S.W.2d 853, 855 (Tex. Ct. App. 1986). And, unlike the ECPA (18 U.S.C. § 2511(2)(d)), Texas's wiretapping statute lacks a "crime-tort" exception to a civil action. *See* Tex. Pen. Code § 16.02(c)(4)(B) ("It is an affirmative defense *to prosecution* under Subsection (b) that … one of the parties to the

communication has given prior consent to the interception, unless the communication is intercepted for the purpose of committing an unlawful act.") (emphasis added). Thus, unlike California law, Defendant's consent to its conduct would be dispositive of Plaintiff's claims under Texas law. *Second*, the two-party consent rule embodies a fundamental policy of California. As the California Supreme Court held over forty years ago:

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device … [S]uch secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements. Partly because of this factor, *the Privacy Act has been read to require the assent of all parties to a communication before another may listen*.

*Ribas*, 38 Cal. 3d at 360-61 (emphasis added; otherwise cleaned up); *see also Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 199-200 (2021) ("Recording a communication without the speaker's consent can implicate significant privacy concerns, regardless of whether a party or someone else is performing the recording.").

Finally, Texas bears little, if any, relation to the instant dispute. While Texas is currently Defendant's headquarters, that did not occur until at least July 20, 2026 (Hollander Decl. ¶ 5), *months after* this action was commenced. Indeed, at the time Plaintiff commenced his action, Defendant was headquartered *in California*. Compl. ¶ 5. Of course, the location of Defendant's headquarters is not in and of itself dispositive of the choice of law inquiry. *See Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1323 (9th Cir. 2012) (the district court's choice of law "inquiry should not have ended" with finding the defendant was located in Georgia.) Even so, it cannot be said Texas has a significant interest in this dispute.

By contrast, California has a significant interest in this dispute. Plaintiff is a California

citizen, and so was Defendant until very recently. Compl. ¶¶ 5-6. Thus, the location of the Parties (for much of the class period) and much of the conduct giving rise to this action occurred in California. Further, "much of the alleged harm occurred in the [D]istrict, and none is alleged to have occurred in" Texas. *Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *3 (N.D. Cal. Oct. 17, 2025). And "[a]lthough [Texas] has an interest in curbing unlawful practices by [Texas] businesses, California has a countervailing interest in protecting local residents from [Defendant's] practices by enforcing California law." *Id.* (cleaned up); *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) ("California has a substantial, case-specific interest in protecting its [citizens] from losing statutory protections…"). Except, given Defendant was a *California* entity until a few months ago, there is no real Texas business interest to protect. "Accordingly, applying California law … even though Texas law would lead to a different result in this case, would not contravene a fundamental Texas public policy." *Bridge Fund Capital Corp.*, 622 F.3d at 1004. On the contrary, California has a materially greater interest in this dispute that would be impaired absent application of its laws.

## II. PLAINTIFF PLAUSIBLY ALLEGES HIS CIPA AND ECPA CLAIMS

### A. The Third Parties Intercepted The Contents Of Plaintiff's Chats

Defendant claims the Third Parties "received only generic record information—URLs, page titles, metadata, and cookies—not the contents or meaning of a communication." MTD at 10:26-27 (cleaned up). This is wrong. As to TikTok, Defendant enables TikTok to not only intercept the "conversation URL," but also the "full transcript of the users' conversations." Compl. ¶ 85. In other words, TikTok acquires the "verbatim message content" of a user's conversation with Grok. *Id.* The verbatim transcript of a user's conversation with Grok qualifies as "content." *See*, *e.g.*, *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1199 (S.D. Cal. 2024) ("These allegations, when accepted as true, support a plausible inference that Salesforce recorded Plaintiffs' chat messages, which qualify as the 'contents' of a communication…."); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 942-43 (S.D. Cal. 2024) ("Plaintiff has sufficiently alleged facts plausibly showing Defendant recorded Plaintiff's content communications with Defendant by recording, among other things, a transcript of Plaintiff's interactions with Defendant's website.").

As to Meta and Google, Plaintiff alleges these third parties intercept the "conversation URL"—which links to the full transcript of the user's conversation with Grok—and the page title of the conversation. Compl. ¶¶ 75, 80. The "page title" qualifies as content. In the LeakyLM report, for instance, the researchers typed "what are the symptoms of liver cancer" into Grok, yielding a page title of "Live Cancer Symptoms and Treatment" that was disclosed to Meta and Google:




Trujillo Decl. Ex. A (showing disclosure to Google).[3] The page title thus qualifies as content because it is "information concerning the substance, purport, or meaning of" the user's communication with Grok (*i.e.*, it conveys the topic or purpose of the user's conversation). 18 U.S.C. § 2510(8); *In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) ("[T]he ECPA broadly defines 'content'…."); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 868 (N.D. Cal. 2026) ("[C]ourts will look at cases analyzing the Wiretap Act as informative of section 631(a).") (cleaned up); *see also Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *5 (N.D. Cal. Dec. 30, 2024) ("The alleged URLs also go beyond revealing a general webpage address with basic identification information that would render it record information. They are descriptive of the content … [and] also show[] content categories and details that describe the current section of the site."); *Campbell v. Select Med. Corp.*, 2026 WL 2056651, at *4 (C.D. Cal. July 14, 2026) ("URLs and code

[3] Available at https://leakylm.github.io/.

that reveal the specific type of medical appointment a patient booked" are content).

The same is true of the conversation URL. Defendant is wrong that URLs are *per se* not "content." *See* MTD at 9:17-18. "URLs which disclose search terms that reveal website users' personal interests, queries, and habits are 'contents' of communications under CIPA and ECPA." *Krzyzek*, 817 F. Supp. 3d at 867 (cleaned up); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014) ("[A] user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication."); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025) ("[A] basic URL that directs to the homepage of a website is often found not to be content, while detailed URLs reflecting users' queries can be 'content.'"). The conversation URL is more like a "descriptive URL" than a "URL that directs to [a] homepage." *Rack Room Shoes*, 2025 WL 1085169, at *5. The conversation URL doesn't just indicate the user visited grok.com or divulge some aspect of the conversation. It is a permanent link to the *entire transcript* of the conversation. Compl. ¶¶ 75, 80. This fits within a traditional wiretapping framework. If someone is listening to a live conversation in real time and recording that conversation via a tape recorder, that is unquestionably wiretapping. The conversation URL would be the same as the tape in that analogy—it is the "recording" of the conversation. Therefore, the conversation URL is content because it is "information concerning the substance, purport, or meaning of" the user's communication with Grok. 18 U.S.C. § 2510(8).

Defendant contends that, regardless of what information the Third Parties intercept generally, "the Complaint is devoid of any well-pled facts suggesting xAI ever shared [Plaintiff's] conversation URLs, or … the content of his conversations." MTD at 11:24-26. But Plaintiff alleges he used Grok "[t]hroughout 2025 and 2026," "entered queries related to sensitive information," and that his information—including the contents of his communications—were intercepted "[p]ursuant to the systematic process described" in the Complaint. Compl. ¶ 10; *see also id.* ¶ 95 ("Plaintiff's claims are typical of the claims of the Class because Plaintiff used the Website and, as a result of Defendant's unlawful conduct, had their PII and communications intercepted by third parties without their express written authorization or knowledge."). In other words, Plaintiff alleges the Third Parties intercept

content, and Plaintiff used Grok in no different a manner than anyone else such that the content of his communications would have been intercepted. *Cf. Doe v. Adventist Health System/West*, --- Cal. Rptr. 3d ---, 2026 WL 2474859, at *22 (2d Dist. Ct. App. July 24, 2026) ("Because plaintiffs presented evidence showing the tracking technologies transmitted the same baseline information discussed above for all subclass members, we conclude they met their burden to show the contents element of their CIPA claim was subject to common proof."); *Semien v. PubMatic Inc.*, 2026 WL 216333, at *9 (N.D. Cal. Jan. 27, 2026) ("While plaintiff Gaw's allegations do not specifically mention URLs, Gaw too adequately alleges that the content the PubMatic pixel collected was the webpages he visited and which pages of the Peacock website he viewed.") (cleaned up). "[T]here is no requirement that [Plaintiff] specifically allege the exact contents of h[is] communications with [Grok]." *Byars v. Goodyear Tire and Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023).

### B. The Third Parties Contemporaneously Intercepted, Read, Attempted To Read, Or Learned The Contents Of Plaintiff's Chats

Defendant cannot seriously dispute that the Third Parties "actually received … the contents of [Plaintiff's] communications with Grok." MTD at 8:19-20. Plaintiff alleges each of the Third Parties intercepted communications "in real time" and the LeakyLM report confirms that by showing the disclosure of content to the Third Parties. Compl. ¶¶ 73-75, 79-80, 84-85; Trujillo Decl. Ex. A; *see also Doe I v. Google LLC*, 2025 WL 1616720, at *1 (N.D. Cal. June 6, 2025) ("[T]here is no dispute that Google received some communications between health providers and users of the providers' websites. That's the point of Google's products—the source code is designed to collect and analyze communications on the webpages on which it is enabled."). Defendant claims the Third Parties only have "the capability to collect user conversations" (MTD at 12:22-23 (cleaned up)), but that is not what the LeakyLM report says. Instead, the report states the Third Parties have "the capability to collect *sensitive* user data." Trujillo Decl. Ex. A (emphasis added). But the LeakyLM report makes clear—and the Complaint alleges—that "[c]onversation URLs, page titles, and user identifiers *are transmitted* to" to the Third Parties. *Id.* (emphasis added). Of course, the Court "cannot take judicial notice of disputed facts" in the report, to the extent Defendant challenges Plaintiff's reading of the same. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir.

2018). But in any event, Plaintiff plausibly alleges the Third Parties in fact received users' communications with Grok.

So, the real dispute is not whether the Third Parties acquired Plaintiff's communications with Grok; it is whether they "intercepted" them within the meaning of the ECPA, or "read, attempted to read, or to learn" the communications "in transit" under CIPA § 631. As to the ECPA, the statute defines "intercept" as "the aural or other acquisition of the contents of any … communication." 18 U.S.C. § 2510(1)(4). "Such acquisition occurs when the contents of a [] communication are captured or redirected in any way." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1075 (N.D. Cal. 2023) (cleaned up). The ECPA's "use of 'intercept' thus reduces to acquiring certain communications using a device. And based on just that definition, anyone could 'intercept' communications, including people who 'acquire' a text message or chat sent to them." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 126 (3d Cir. 2022) (interpreting identical language in Pennsylvania's wiretapping statute); *Yockey*, 688 F. Supp. 3d at 975 ("Salesforce has [] intercepted [] communications within the meaning of [Pennsylvania's wiretapping law] to the extent that Salesforce received and stored those communications on its servers."). For the same reasons articulated above, Plaintiff has plausibly alleged the Third Parties "intercepted" his communications under the ECPA (*i.e.*, they acquired the communications simultaneously with Plaintiff sending them to Grok). *See*, *e.g.*, Compl. ¶¶ 43, 47, 64, 67, 73, 75, 77, 80, 82, 84-85, 88.

As to CIPA § 631(a), "the standard is not overly burdensome" and "[a]llegations that communications are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025). And here, Plaintiff alleges the Third Parties "learned the content of [his] communications while they were in transit, either before or simultaneously with the intended recipient." *Ambriz v. Google, LLC*, 2025 WL 830450, at *4 (N.D. Cal. Feb. 10, 2025); *see also* Compl. ¶ 78 ("Google receives each conversation via Google Analytics and immediately views the information contained therein, processes it, and adds it to datasets to target advertisements…"); *id.* ¶ 83 (same as to Meta); *id.* ¶ 89 (same as to TikTok).

In particular, each of the Third Parties is alleged to have contemporaneously at least

attempted to understand the substance of Plaintiff's conversations with Grok to inform targeted advertisements. *See*, *e.g.*, Compl. ¶¶ 29 ("[r]eal-time reporting"), 43, 66-67, 69, 78, 83, 89; *see also Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 978 (C.D. Cal. 2023) (real-time reading alleged where plaintiff "pointed to statements from Akamai regarding real-time insights and data from every use event collected as it happens") (cleaned up); *Jones v. Skullcandy, Inc.*, 2026 WL 699819, at *17 (S.D. Cal. Mar. 12, 2026) (same where "Plaintiff provides detailed explanations of how the Tracking Technologies collect Plaintiff's data in real time, including information about the pages the user views, the items the user interacts with, and any potential purchase or checkout steps in real time"); *D'Angelo*, 726 F. Supp. 3d at 1199. Numerous courts evaluating similar allegations involving the same Third Party trackers have agreed. *See*, *e.g.*, *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024) (finding "in-transit" interception alleged under CIPA § 631(a) as to Meta Pixel); *Ramirez v. Trusper, Inc.*, 2026 WL 2351235, at *6 (N.D. Cal. Aug. 13, 2026) (same as to Meta and TikTok Pixels); *Lynch v. Express Scripts Holding Co.*, 2026 WL 1749550, at *7 (N.D. Cal. June 17, 2026) ("Lynch's allegations are sufficient to plausibly plead that Meta read or attempted to read his communications with the … website while those communications were in transit."); *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) (CIPA § 631(a) claim sustained in case involving Google Analytics).

Defendant latches onto language in the LeakyLM report that there is a "potential risk" that the Third Parties read users' communications. MTD at 2:2-3 (citing Trujillo Decl. Ex. A). Defendant misquotes the article, and its disputed (mis)interpretation is not subject to judicial notice. *Khoja*, 899 F.3d at 999. The Third Parties are contemporaneously reading the information they receive via the HTTP request (*e.g.*, the page title of the conversation, the conversation URL itself). Compl. ¶¶ 75, 80, 85. Those pieces of information are in and of themselves content, so Plaintiff has sufficiently pled his CIPA and ECPA claims based on that information alone. Argument § II.A, *supra*.

The "potential risk" refers *only* to whether the Third Parties are reading the entire transcript of the user's conversations via the conversation URL (*i.e.*, are the Third Parties instantaneously "clicking" on the conversation URL and reading every word of the transcript, or just the conversation URL itself). To that end, Plaintiff is not required to prove his case at the pleadings, especially given

that much of the information about the Third Parties' capabilities is proprietary and rests outside of the public realm. "A pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party record." *St. Aubin*, 2024 WL 4369675, at *6 (cleaned up). Instead, Plaintiff's allegations must only create the "reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). So, discovery will inform whether the Third Parties in fact read every word of the transcript of users' conversations with Grok. But given the dissemination of Grok conversations to the Third Parties, the purposes of the Third Parties' trackers alleged in the Complaint, caselaw involving these same trackers, and the fact the Third Parties are reading the conversation titles and conversation URLs themselves, a *"reasonable inference"* can be made that the Third Parties "read" the full transcript of users' conversations via the conversation URL.

Defendant's cited authorities on this point are inapposite. MTD at 11:26-12:17, 13:1-6. In *Rand v. Eyemart Express, LLC*, 2025 WL 1519726, at *4 (N.D. Tex. May 27, 2025), the plaintiffs alleged that medical information was disclosed, but "the figures showing the metadata and identifying" what information was actually disclosed did not include "the prescription information." In other words, the *Rand* plaintiffs' allegations did not line up with the snippets of network traffic included in the complaint. The opposite is true here, where Plaintiff's allegations and the LeakyLM report line up (*i.e.*, the information Plaintiff alleges was disclosed to the Third Parties was in fact disclosed). Compl. ¶¶ 73-75, 79-80, 84-85. In *Dawson v. Meta Platforms, Inc.*, 2026 WL 2137134, at *6 (N.D. Cal. July 23, 2026), "merely stating that the complaint's allegations came from whistleblowers without further elaboration is insufficient on its own to make it plausible that WhatsApp employees have been accessing its user messages in the manner alleged by the whistleblowers." Here, Plaintiff's allegations are well-substantiated by the LeakyLM report's investigation of Grok and the Third Parties' own documentation. *Gutierrez v. Converse Inc.*, 2025 WL 1895315 (9th Cir. July 9, 2025), was a summary judgment decision and so had the benefit of discovery. And in *Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024), unlike here, the plaintiffs could not allege Google intercepted their communications because they could not allege

Google's software was present on the webpage *at all*. *Id.* at 844 ("[A]ny reports Google creates would only capture activity on pages where Google source code is present and … the plaintiffs do not adequately allege where on a web property the source code actually exists."). Similar reasoning distinguishes *Doe v. Amgen, Inc.*, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024), and *Stevens v. TD Bank, N.A.*, 2025 WL 1779164, at *5 (D.N.J. June 27, 2025). *Amgen*, 2024 WL 575248, at *3 ("Plaintiff does not describe what personal information the Google Tracking Pixels collected…"); *Stevens*, 2025 WL 1779164, at *4 (plaintiff does not allege "what information of his—if any—was actually transmitted from his browser to Meta") (cleaned up).

Finally, and notwithstanding how the Third Parties generally acted, Defendant again argues Plaintiff cannot allege the Third Parties intercepted *his* communications because "Plaintiff does not allege he ever accepted non-essential cookies." MTD at 11:12. This argument is irrelevant as to Google, which intercepts communications "regardless of what users choose in regards to cookies on the Website." Compl. ¶ 75. But it is also irrelevant as to Meta and TikTok. As Defendant's briefing makes clear, it assumed Plaintiff assented to the conduct simply by using Grok. *See*, *e.g.*, MTD at 17:6-8 ("Every version of the Terms governing Plaintiff's use provides that use of the Service constitutes acceptance of the Terms, and continued use constitutes acceptance of any revised Terms."); *id.* at 17:16 ("The Terms unambiguously authorize each category of conduct alleged in the Complaint."). So, even though Plaintiff did not actually consent to the wiretapping (Argument § I, *supra*), Defendant assumed he did simply by using Grok. Meaning, non-essential cookies would have been "accepted" and Plaintiff's information was disclosed to Meta and TikTok by Defendant's own interpretation of its Terms.

### C. Plaintiff's Chats With Grok Were "Confidential" Under CIPA § 632

Defendant argues Plaintiff's CIPA § 632 claim fails because Plaintiff "does not—and cannot—allege an objectively reasonable expectation" that his Grok chats were not being recorded." MTD at 22:23-24 (cleaned up). It is irrelevant whether that recording was done by Defendant or Meta/Google/TikTok because it has "long been established that section 632 prohibits parties as well as nonparties from recording a confidential communication." *LoanMe*, 11 Cal. 5th at 198 (cleaned up). And a "communication is confidential if a party to the conversation had an objectively

reasonable expectation that the conversation was not being overheard or recorded." *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 858 (W.D. Wash. 2024) (cleaned up). This is "generally a question of fact." *Id.* at 859 (cleaned up). Nonetheless, Plaintiff has plausibly alleged his communications with Grok were confidential for at least two reasons.

*First*, Plaintiff alleges he chatted with Grok about "finances, investment strategy, private health conditions, business projects, and other private information," yet those communications were intercepted by the Third Parties—as enabled by Defendant—without Plaintiff's consent. Compl. ¶¶ 7, 10. Courts have routinely found that communications about health and financial matters are "confidential" within the meaning of CIPA § 632. *See*, *e.g.*, *Yockey*, 688 F. Supp. 3d at 973 (N.D. Cal. 2023) (sustaining CIPA § 632 claim based on interception of information from chat portal on Kaiser Permanente's website); *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024) ("Plaintiff has plausibly alleged that the sensitive financial information being recorded is the type that could be reasonably considered confidential."); *In re Otter.AI Privacy Litig.*, --- F. Supp. 3d ---, 2026 WL 2351237, at *10 (N.D. Cal. Aug. 13, 2026) ("Plaintiff Theus plausibly alleges a confidential communication because he alleges that he communicated with a medical professional, and thus, the call involved deeply personal and private medical information.") (cleaned up).

*Second*, Plaintiff had "a reasonable expectation that the immense amount of personally identifiable and browsing data allegedly collected by the Tracking Technologies would not be shared with third parties." *Jones*, 2026 WL 699819, at *18. In *Jones*, for instance, the court sustained a CIPA § 632(a) claim where the plaintiff alleged third parties "collect[ed] information such as detailed browsing histories and product preferences, … personally identifiable information including names, email addresses, and Facebook/Google account identifiers, real-time behavioral data showing consumer interests and purchasing patterns, and demographic and psychographic profiles that enable targeted marketing." *Id.* So too here. Plaintiff alleges each of the Third Parties collected the *entire transcript* of his conversations with Grok, did so in a non-anonymous manner, and tied those conversations to detailed profiles for use in targeted advertising (and for the Third Parties' own purposes). *See*, *e.g.*, Compl. ¶¶ 7, 10, 23-26, 35-36, 40, 45, 50, 52-53, 57, 65-66, 75, 80, 85. Surely, it goes beyond the expectation of a reasonable user that their entire, detailed transcripts with an AI

would be leaked without their consent to three of the world's largest technology companies.

**D. The Party Exception Does Not Bar Plaintiff's Wiretapping Claims**

Plaintiff alleges Defendant aided, agreed with, employed, and/or procured the Third Parties to intercept his communications with Grok in violation of the fourth clause of CIPA § 631(a) and CIPA § 632, as well as the ECPA. *See* 18 U.S.C. § 2511(1)(a); *see*, *e.g.*, Compl. ¶¶ 111, 127. In the alternative, Plaintiff alleges Defendant used the Third Parties' technologies to record Plaintiff's communications with Grok in violation of CIPA § 632(a). Compl. ¶¶ 111, 145. And Plaintiff has alleged a predicate violation of each statute by the Third Parties for the reasons set forth above upon which to base Defendant's liability. Argument §§ II.A-C, *supra*. Defendant's argument that it can avoid liability under the "party" exception thus fails. *See Jones*, 2026 WL 699819 at *18 n.7 ("Defendant argues that a party to the communication is exempt from CIPA liability … [T]his argument is irrelevant because Plaintiff is alleging that Defendant aided and enabled third parties to capture her communication.") (cleaned up).

*First*, as to CIPA § 631(a), Defendant contends "[a] party does not eavesdrop on its own conversation by using a third-party software tool to analyze that conversation." MTD at 14:16-17. Notwithstanding this is not the extent of the Third Parties' use of the information, Plaintiff alleges Defendant aided ("provid[ed] support") to the Third Parties' wiretapping. *See Rusow v. Skinspirit Essential LLC*, 2025 WL 4657637, at *11-12 (N.D. Cal. Oct. 15, 2025) ("[T]here is little question that Rusow sufficiently alleged that SkinSpirit was aware of and intended to allow LinkedIn and Google to intercept her communications."). Specifically, Plaintiff alleges Defendant installed the Third Parties' tracking software on its website and configured the software to record the full transcript of users' Grok communications. *See*, *e.g.*, Compl. ¶¶ 32, 36, 43-44, 57, 62, 68. Further, "most district courts in the Ninth Circuit have rejected the argument that a service provider is categorically exempt from CIPA under the party exemption rule." *Gray v. Luxottica of Am., Inc.*, 2024 WL 5689566, at *5 (C.D. Cal. Dec. 16, 2024). Instead, the prevailing view in this District and others is that a software-as-a-service ("SaaS") provider like the Third Parties are "third parties" under CIPA § 631 if they "ha[ve] the capability of using [their] recording for another purpose." *Taylor v. ConverseNow Techs., Inc.*, 2025 WL 2308483, at *4 (N.D. Cal. Aug. 11, 2025) (citing *Javier v.*

*Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). Here, Plaintiff alleges each Third Party has the capability to use the intercepted information beyond simply regurgitating its contents to Defendant. *See*, *e.g.*, Compl. ¶¶ 24-27, 39, 47-50, 71-72. Accordingly, the "party exception" does not apply because the Third Parties are not "parties" to the communication and Defendant is derivatively liable for enabling their conduct.

*Second*, the ECPA imposes liability for "procur[ing] any other person to intercept" communications (*i.e.*, it imposes derivative liability). 18 U.S.C. § 2510(1)(a); *Boseovski v. McCloud Healthcare Clinic, Inc.*, 2020 WL 68578, at *6 (E.D. Cal. Jan. 7, 2020) ("Given that procurement can still give rise to a violation under § 2511(1)(a), and given that an entity may be civilly liable under § 2520(a) for that violation, defendant in this case may be held civilly liable if it violated the underlying criminal statute by way of procurement."); *Dawson v. Univ. of Phoenix, Inc.*, 2026 WL 92248, at *14 (N.D. Ill. Jan. 13, 2026) ("[T]he victim of the wiretap may sue any person or entity who engaged in the violation, including procuring interception."). And Defendant's consent is not sufficient to defeat the ECPA claim because the crime-tort exception applies to Defendant's conduct.

Courts have held "the disclosure and use of Plaintiff['s] information for advertising can plausibly constitute an independent invasion of privacy beyond the act of intercepting the information alone, satisfying the crime-tort exception." *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *3 (N.D. Cal. Jan. 6, 2026); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (Koh, J.) (crime-tort exception satisfied where plaintiffs alleged conduct "violated state law, including … intrusion upon seclusion, and invasion of privacy"); *Krzyzek*, 817 F. Supp. 3d at 869 ("Where, as here, plaintiffs adequately alleged invasion of privacy, the Court is not convinced that ECPA's crime-tort exception does not apply."). Such is the case here. Plaintiff alleges Defendant enabled the Third Parties to intercept Plaintiff's conversations with Grok for use in targeted advertising and marketing at users based on the content of those conversations. *See*, *e.g.*, Compl. ¶¶ 24-28, 31, 35-36, 39-42, 45, 47-48, 50, 63, 83, 87, 89.

*Third*, it has "long been established that section 632 prohibits parties as well as nonparties from recording a confidential communication." *LoanMe*, 11 Cal. 5th at 198 (cleaned up); *see also Turner v. Nuance Communications, Inc.*, 735 F. Supp. 3d 1169, 1182 (N.D. Cal. 2024) ("The third

party doctrine applies to 'eavesdropping,' but not 'recording.'"). Defendant argues it cannot be liable under CIPA § 632 because it is alleged the Third Parties did the recording and CIPA § 632 "impose no secondary liability." MTD at 15:13. As an initial matter, Plaintiff alleges in the alternative that Defendant used the Third Parties' trackers to record users' communications with Grok. *See* Compl. ¶ 138; *see also* Cal. Pen. Code § 632(a); Fed. R. Civ. P. 8(d)(2)-(3). Each of these trackers is an "an electronic amplifying or recording device," as the vast majority of courts have found. *Rack Room Shoes*, 2025 WL 1085169, at *5 (collecting cases).

Even putting that aside, Plaintiff may pursue his CIPA § 632 claim derivatively against Defendant. Although "the text of section 632 does not expressly provide for derivative liability … under California Penal Code section 31, all persons concerned in the commission of a crime or who aid and abet in its commission are principals in any crime so committed." *Rack Room Shoes*, 2025 WL 1085169, at *5 (cleaned up). "Nothing in the language of CIPA explicitly limits the application of section 31." *Id.*; *see also Vera v. O'Keefe*, 791 F. Supp.2d 959, 963-64 (S.D. Cal. 2011) ("[T]here is no exclusion to the applicability of Penal Code § 31 with respect to Penal Code § 632. Accordingly, the Court finds that plaintiff has stated a claim against Giles as a principal in violating Penal Code § 632.…). Thus, Plaintiff may pursue a CIPA § 632 claim directly against Defendant so long as he alleges Defendant "g[a]ve substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Rack Room Shoes*, 2025 WL 1085169, at *5 (cleaned up). Plaintiff has so alleged here: Defendant "knowingly and affirmatively embedded [the Third Parties'] code into its website" knowing the Third Parties "data collection had the purpose of tracking individually identifiable user habits." *Id.*; *see also*, *e.g.*, Compl. ¶¶ 23-28, 33, 35, 40-41, 45, 51-52, 55, 57, 66, 72. Despite this, Defendant failed to secure users' consent to the data tracking and failed to disclose the extent of the data tracking in its privacy policy. *See* Argument §§ I.B-C, *supra*. Thus, Plaintiff plausibly alleges Defendant "aided and abetted" the Third Parties' violations and can therefore bring a CIPA § 632(a) claim directly against Defendant.

**III. PLAINTIFF PLAUSIBLY ALLEGES HIS CALIFORNIA CONSTITUTION CLAIM**

Defendant argues Plaintiff's California Constitution claim fails because "Plaintiff fails to plausibly allege either a 'serious invasion of privacy' or a 'highly offensive' intrusion." MTD at 24:1-2. In particular, Defendant notes "[t]he Complaint alleges only generic categories of topics Plaintiff says he discussed with Grok … but never identifies a single prompt or sensitive fact that was ever transmitted to xAI." Of course, as Defendant identified Plaintiff's Grok account (Murphy Decl. ¶ 15), it should have records of Plaintiff's chats. Regardless, "there is no requirement that [Plaintiff] specifically allege the exact contents of h[is] communications with [Grok]." *Byars*, 654 F. Supp. 3d at 1027; *see also In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 816 (N.D. Cal. 2020) (Labson Freeman, J.) ("[T]he Court rejects Defendants' suggestion that Plaintiffs must identify specific communications that Plaintiffs reasonably believed to be private and that were wrongly recorded … at the pleading stage, prior to discovery."). A contrary rule would make little sense in the context of a privacy case with a public pleading. As it stands, Plaintiff has alleged he communicated with Grok, the topics of those conversations, and that the entire transcript of those conversations were disseminated to the Third Parties. Compl. ¶¶ 7, 10, 73-75, 79-80, 84-85. That is enough. The conduct here was also "highly offensive," and Plaintiff had a "reasonable expectation of privacy" in his communications, for the reasons stated above. Argument § II.C, *supra*.

Defendant also attempts to dismiss any intrusion as involving "routine commercial behavior." MTD at 24:20-21. What a reasonable user expects and what behavior is "routine" are questions of fact inappropriate for the pleadings stage. As a result, "[t]he Ninth Circuit has identified that whether a company's tracking and collection practices could highly offend a reasonable individual is an issue that a court may be unable to resolve at the pleading stage." *Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *9 (C.D. Cal. Dec. 4, 2025). As it stands, "[c]ourts have found unauthorized data sharing could possibly constitute a 'highly offensive' intrusion in certain circumstances." *J.S. v. Spring Fertility Holdings, LLC*, 2026 WL 1483490, at *7 (N.D. Cal. May 27, 2026). Accordingly, the Court should wait to resolve "the degree to which Defendant's conduct was highly offensive to a reasonable person" until after "the pleading stage." *Lewis*, 2025 WL 3687546, at *9.

## IV. IF THE COURT GRANTS THE MOTION (WHICH IT SHOULD NOT), PLAINTIFF SHOULD BE GIVEN LEAVE TO AMEND

Defendant argues that leave to amend should be denied as futile. MTD at 24:26-25:1. Notwithstanding Plaintiff's claims are far from futile, the Ninth Circuit has emphasized that "[u]nder [the] futility analysis, dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by *any* amendment." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (cleaned up) (emphasis added); *see also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (noting that a court should permit amendment "unless it determines that the pleading could not possibly be cured by the allegation of other facts"). Here, it is far from certain that Plaintiff's claim is futile. Indeed, numerous courts have sustained CIPA, ECPA, and constitutional privacy claims in cases involving the Third Parties here. Thus, should the Court grant Defendant's Motion (and it should not), Plaintiff respectfully requests leave to amend to cure any defects in his allegations.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion. To the extent the Court grants Defendant's Motion in any respect, Plaintiff respectfully requests leave to amend pursuant to Fed. R. Civ. P. 15(a). *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017).

Dated: September 9, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ *Max S. Roberts*
Max S. Roberts

Max S. Roberts (State Bar No. 363482)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

*Attorneys for Plaintiff*